**Doug DAY, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2003–CA–001385–MR.

Court of Appeals of Kentucky.

Dec. 17, 2004.

Discretionary Review Denied by Supreme Court Nov. 16, 2005.

David Eucker, Assistant Public Advocate, Frankfort, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Natalie Lewellen, Assistant Attorney General, Frankfort, KY, for appellee.

Before JOHNSON, TAYLOR, and VANMETER, Judges.

*OPINION*

VANMETER, Judge.

This is an appeal from a judgment entered by the Kenton Circuit Court after a jury found Doug Day guilty of rape in the first degree. The primary issue on appeal concerns the adequacy of the jury instructions. Day argues that the trial court erred in refusing to instruct the jurors that they had to find beyond a reasonable doubt that the victim did not consent to sexual intercourse. He also argues that the trial court erred in failing to give an instruction regarding the lesser-included offense of sexual abuse. Day's other claims are that he was denied a fair trial when the Commonwealth failed to establish the chain of custody for a pair of the victim's shorts that were introduced into evidence, and that the trial court erred in failing to grant his motions for a directed verdict. We affirm.

The trial testimony showed that Day and the victim, D.S., were acquaintances who ran into each other at several parties on the night of the incident. Later that night, D.S. saw Day standing outside his apartment building as she walked past, and she stopped to talk to him. Day's mother, who lived in the building and watched the encounter from the doorway, testified that Day introduced D.S. and said within D.S.'s hearing that he was going to "f——" her. D.S. testified that Day told her he wanted to take his mother's car to a party to steal a keg of beer. D.S. explained that because she wanted to deter him from driving since he had been drinking, she accompanied Day to his apartment, where the two shared a beer.

D.S. testified that Day kissed her twice and she told him to stop. When she got up to leave, Day seized her and carried her into the bedroom. She tried unsuccessfully to stop him by grabbing the doorframe. Day threw her onto the bed and made various obscene remarks. She cried and asked him to stop, but he licked her inner thigh and poked his fingers into her vagina. D.S. tried to fight back by punching and kicking Day, but he jerked her shorts down to her knees, breaking the fastener. D.S. testified that at that point, realizing she was going to be raped, she decided to stop resisting. After sexual intercourse occurred, D.S. ran from the apartment stating that she would find someone "to kick [Day's] ass."

D.S. passed a police officer on patrol but did not flag him down. She returned to Day's apartment some time later when she realized she had left her driver's license there. Day was not at the apartment, but his mother let her in. D.S. retrieved her license and called the police. The investigating police officer observed that she was shaking and crying and had a small cut on her lip. The officer testified that D.S. complained to him of soreness in her shoulder as a result of the assault, and that she had to hold up her shorts to prevent them from slipping down. D.S. was taken to a hospital, where an examination using a "rape kit" indicated the presence of Day's semen.

Day did not deny that intercourse occurred. Instead, he testified that he believed that D.S. was attracted to him and that she had engaged in consensual sex. Day further testified that D.S. only became angry with him afterwards for failing to wear a condom during intercourse, and for asking her if she made all her "cop boyfriends" wear condoms. The jury convicted Day of first-degree rape, and he was sentenced to ten years' imprisonment.

Day raises several arguments concerning the jury instructions. The first

concerns the trial judge's refusal to include an instruction on lack of consent. The instructions that were given closely followed the language of KRS 510.040(1)[1] and KRS 510.010(2),[2] which respectively define rape in the first degree and forcible compulsion. The instructions stated:

> You will find the Defendant, Roger Doug Day, guilty of the offense of Rape, First Degree, if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or about September 2, 2001 and before the finding of the Indictment herein, he engaged in sexual intercourse with [D.S.];
>
> AND
>
> B. That he did so by forcible compulsion.

"Forcible compulsion" was defined in the instructions as

> physical force or threat of physical force, express or implied, which places a person in fear of immediate death or physical injury to herself; physical resistance on the part of the person subjected to forcible compulsion is not necessary to meet this definition.

Day argues that the trial court erred in refusing also to include the following tendered instruction regarding lack of consent:

> Although not stated in instruction No.—— an[d] Instruction No. ——, it is an element of these offenses that the sexual act was committed without the consent of [D.S.] Unless you believe beyond a

reasonable doubt that [D.S.] did not consent, then you must find the defendant not guilty.

Day maintains that this additional instruction was required under the terms of KRS 510.020(1), which states in part that

> [w]hether or not specifically stated, it is an element of every offense defined in this chapter that the sexual act was committed without consent of the victim.

Day argues that because KRS 510.020(1) establishes that lack of consent is an element of forcible rape, the trial court erred in refusing to include the proffered instruction, as the jurors were left without guidance in the event they had doubts concerning D.S.'s consent.

The trial court rejected the instruction on the ground that lack of consent is implicit in the KRS 510.010(2) definition of forcible compulsion. KRS 510.020(2) also states that "[l]ack of consent **results from** ... [f]orcible compulsion[.]" (Emphasis added.) The court reasoned that including an instruction on lack of consent would be "saying the same thing twice."

We agree with the trial court that "lack of consent" is an inescapable result of "forcible compulsion." As this court has previously explained, "[l]ack of consent is a separate element of every offense defined by Chapter 510 of the Kentucky Revised Statutes. Lack of consent can result from forcible compulsion or incapacity." *Salsman v. Commonwealth*, 565 S.W.2d 638, 640 (Ky.App.1978) (citing KRS 510.020). Further, lack of consent is implicit in the

---

1. KRS 510.040(1) states in relevant part that "A person is guilty of rape in the first degree when ... [h]e engages in sexual intercourse with another person by forcible compulsion[.]"

2. KRS 510.010(2) defines forcible compulsion as

physical force or threat of physical force, express or implied, which places a person in fear of immediate death, physical injury to self or another person, fear of the immediate kidnap of self or another person, or fear of any offense under this chapter. Physical resistance on the part of the victim shall not be necessary to meet this definition[.]

jury's finding that D.S. was "forcibly compelled" to have sexual intercourse with Day. As Kentucky's highest court has noted, a special instruction is not required "if the instruction which submits the Commonwealth's theory is couched in such language that the ordinary layman who sits upon the jury can easily understand and its negative completely covers the defense of the accused." *Blevins v. Commonwealth,* 258 S.W.2d 501, 502–03 (Ky.1953). The trial court did not err in refusing to give the proffered instruction.

■ Day appears to argue further that the trial court erred in failing to instruct the jury as to his lack of intent in committing the crime,[3] and as to his mistake of fact regarding D.S.'s consent.[4] A review of the record discloses, however, that neither of these arguments was raised with the trial court. Under RCr 9.54(2), "[n]o party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge. . . ." In addition, Day is not entitled to relief under the palpable error rule set out in RCr 10.26. *See Commonwealth v. Pace,* 82 S.W.3d 894 (Ky.2002) (upon consideration of the whole case, no substantial possibility exists that the result would have been any different if the jury had been instructed otherwise).

■ Day's final argument regarding the jury instructions is that the trial court erred in failing to give an instruction on first-degree sexual abuse. D.S.'s testimony indicated that she was taken against her will into the bedroom, and that sexual touching followed. She testified that she was so afraid that she stopped struggling and allowed sexual intercourse to occur. Day claims the sexual abuse instruction was warranted because the jury could have believed that while the initial sexual encounter was not consensual, the intercourse portion of the encounter was consensual. However, "[w]hen all of the evidence indicates that there was sexual intercourse and there is no evidence that there was only sexual contact, a defendant is not entitled to an instruction on the lesser offense of sexual abuse in the first degree." *Salsman,* 565 S.W.2d at 642. Here, as no dispute exists that sexual intercourse occurred, the trial court did not err in refusing to give such an instruction.

Day's next argument concerns the introduction into evidence of a pair of shorts with a broken fastener which allegedly were worn by D.S. at the time of the assault. Day argues that since consent was a primary issue in this case, the chain of custody of the shorts was of critical importance to his defense. He claims that the following facts cast serious doubt on whether the shorts introduced into evidence were actually those worn by D.S. First, although Day's mother testified that D.S. was wearing white shorts with yellow stripes shortly after the incident, the shorts introduced into evidence had no stripes. Second, the nurse who examined D.S. at the hospital could not be located and thus was not available to identify the shorts at the trial. Third, Day claims that the integrity of items kept in the Ludlow police department locker is questionable, as the Commonwealth's Attorney commented during a pretrial hearing that employees who were responsible for the evidence locker were leaving the police department.

■ Kentucky law is well established that "the integrity of weapons or similar items of physical evidence, which are clearly identifiable and distinguishable, does not

---

3. KRS 501.030(2) and KRS 501.040.

4. KRS 501.070(1).

require proof of a chain of custody[.]" *Rabovsky v. Commonwealth,* 973 S.W.2d 6, 8 (Ky.1998) (citations omitted). In *Beason v. Commonwealth,* 548 S.W.2d 835 (Ky. 1977), for example, a defendant claimed a gap existed in a gun's chain of custody. However, the Kentucky Supreme Court held that the arresting officer's testimony that the gun was the same as the one carried by the defendant was sufficient identification to authorize introduction of the gun into evidence. The Court explained,

> [i]f the offered item possesses characteristics which are fairly unique and readily identifiable and if the substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit merely on the basis of testimony that the item is the one in question and is in a substantially unchanged condition.

*Id.* at 837 (quoting McCormick, Evidence § 212, p. 527 (1972)). Furthermore,

> [e]ven with respect to substances which are not clearly identifiable or distinguishable, it is unnecessary to establish a perfect chain of custody or to eliminate all possibility of tampering or misidentification, so long as there is persuasive evidence that "the reasonable probability is that the evidence has not been altered in any material respect."

*Rabovsky,* 973 S.W.2d at 8 (citations omitted.)

Here, both the victim and the arresting officer testified that the shorts introduced into evidence were the ones worn during the incident. Their testimony was sufficient to establish with a reasonable probability that the shorts were indeed the ones worn during the incident, and that they had not been altered in any material respect. The testimony of Day's mother, and the vague allegations about the police evidence locker, are not sufficient to render the evidence inadmissible.

Day's final claim is that he was entitled to a directed verdict. A defendant is entitled to a directed verdict of acquittal if, under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt. *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991). Day maintains that no reasonable juror could have found him guilty because D.S. initiated their encounter, and she did not leave even after Day announced to his mother that they were going to have sex. Furthermore, although D.S. testified that she was carried forcibly into the bedroom, Day claims that ceramics on a nearby piano and a curtain draped around the bedroom doorway were undisturbed. He also points to the fact that after the assault, D.S. walked past a patrolling police officer without alerting him to the events, and later she voluntarily returned to Day's apartment to retrieve her driver's license.

We do not find these facts sufficient to invalidate the reasonableness of the jury's finding that Day was guilty. The countervailing evidence was that Day refused to stop kissing D.S. when she repeatedly told him "no"; that he carried her into the bedroom and pried her hand from the doorframe; that she was crying and telling him to stop throughout the assault; that she tried to fight him off but was not strong enough; that he tore the fastener of her shorts when he pulled them down; and that she sustained a cut on her lip and bruises on her body. These facts were sufficient to sustain the jury's finding of guilt.

We affirm the judgment of the Kenton Circuit Court.

ALL CONCUR.