

# IN THE SUPREME COURT OF GUAM

## PEOPLE OF GUAM,
Plaintiff-Appellee,

**v.**

## WESER WESEN
## (aka Weser Weson; aka Weson Weson),
Defendant-Appellant.

Supreme Court Case No. CRA21-008
Superior Court Case No. CF0641-18

## OPINION

## Cite as: 2022 Guam 18

Appeal from the Superior Court of Guam
Argued and submitted on October 28, 2021
Via Zoom video conference

Appearing for Defendant-Appellant:
James M. Maher, *Esq.*
Law Office of James M. Maher
238 Archbishop Flores St., Ste. 300
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Christine Santos Tenorio, *Esq.*
Assistant Attorney General
Office of the Attorney General
Prosecution Division
590 S. Marine Corps Dr., Ste. 801
Tamuning, GU 96913

E-Received
12/30/2022 9:35:30 AM

BEFORE: F. PHILIP CARBULLIDO, Chief Justice; ROBERT J. TORRES, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**TORRES, J.:**

**[1]**      Defendant-Appellant Weser Wesen appeals from a final judgment of conviction on two counts of First Degree Criminal Sexual Conduct (as a First Degree Felony) ("CSC I") and four counts of Third Degree Criminal Sexual Conduct (as a Second Degree Felony) ("CSC III"). On appeal, Wesen challenges two jury instructions and the admission of certain evidence against him. We affirm in part, reverse in part, and remand to the Superior Court for further proceedings not inconsistent with this opinion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**[2]**      Wesen was indicted on two counts of CSC I and four counts of CSC III, each against a young female, O.W. In the indictment, only one charge (CSC III, Count Four) specified the date on which the alleged criminal act occurred. The other five charges alleged acts of criminal sexual conduct within a range of time, from about four months (CSC III, Count Two) to about one year (CSC I, Count One; CSC III, Count One).

**[3]**      Before trial, Wesen filed his "Formal Request For 6 G.C.A. § 404(b) Evidence" in the Superior Court. This document requested Plaintiff-Appellee People of Guam ("People") provide pretrial notice of "any 6 G.C.A. § 404(b) evidence that the Prosecution intends to use at trial," including "not merely a statement of intent to use such evidence, but a general nature as to the kind of evidence that would be offered[], such that the Defendant could ascertain whether the evidence is of the kind that is offered for a purpose other than propensity." Record on Appeal ("RA"), tab 22 at 1 (Nov. 14, 2018).

**[4]** During Wesen's trial, the following evidence relevant to this appeal was adduced. O.W. testified she moved to Guam from Chuuk on September 10, 2015. O.W. testified she first lived in Guam with her mother and Wesen—her mother's boyfriend—at a residence in Kaiser, Dededo. O.W. testified the three lived in Kaiser for either "three years," Transcript ("Tr.") at 23 (Jury Trial, Dec. 11, 2018), "three weeks," Tr. at 41 (Jury Trial, Dec. 12, 2018), or "three months," *id.* While they lived at the Kaiser residence, Wesen propositioned O.W. for sex. O.W. testified that she felt "scared" to resist Wesen's advances, stating, "[I]f I say no, he spanks me." Tr. at 26 (Jury Trial, Dec. 11, 2018). O.W. explained that although she did not want to have sex with Wesen, they had sex "three times or two times a week." *Id.* at 28.

**[5]** After living in Kaiser, O.W. and Wesen moved to a residence in Yigo, where they lived for a short time; either "one week," *id.* at 23-24, or "three weeks," Tr. at 43 (Jury Trial, Dec. 12, 2018). O.W. initially testified that at the Yigo residence, she and Wesen did not have sex, Tr. at 30 (Jury Trial, Dec. 11, 2018), but clarified on cross-examination she and Wesen had sex "maybe a couple times" there, Tr. at 43 (Jury Trial, Dec. 12, 2018). O.W., her mother, and Wesen then moved to Chalan Palauan, Dededo. O.W. could not recall how long she lived in Chalan Palauan but believed it was for a period of "months." *Id.* at 44. O.W. testified that Wesen continued to have sex with her at the Chalan Palauan residence, stating, "If he ask me, and if I say no, he will beat me." Tr. at 31-32 (Jury Trial, Dec. 11, 2018). Finally, O.W., her mother, and Wesen moved to a residence in Maite, and O.W. testified that the pattern continued there as well. *Id.* at 34. O.W. testified to specific details of one incident in Maite, which occurred on October 11, 2018. O.W. summarized this incident by saying Wesen "t[old] me he wants to have sex with me. I didn't want to. He beat me." *Id.* at 36. O.W. explained that Wesen beat her on her legs, arm, feet, and eyes, and that she felt "weak" afterward. *Id.* at 36-37. O.W. also testified that she gave birth to a child in October

2018. O.W. testified that Wesen was the father of the child because "[h]e's the only one having sex with me." *Id.*

[6]     O.W.'s age was a heavily contested issue at trial, and there was contradictory evidence presented. O.W., who sometimes spoke through an interpreter, testified both on direct examination and on cross-examination that she believed herself to be nineteen years old at the time of trial, in December 2018. *Id.* at 19; Tr. at 12 (Jury Trial, Dec. 12, 2018). She also testified she turned eighteen years old on October 15, 2017, Tr. at 15 (Jury Trial, Dec. 12, 2018), that she was fifteen when she came to Guam in September 2015, Tr. at 20 (Jury Trial, Dec. 11, 2018), and that she turned sixteen in October 2015, Tr. at 18 (Jury Trial, Dec. 12, 2018). This testimony, if true, would appear to suggest O.W. was born in 1999. But O.W. also testified that she was born on October 15, 2000. Tr. at 19 (Jury Trial, Dec. 11, 2018). The People introduced into evidence O.W.'s passport, which listed her birthday as October 15, 2000. *Id.* at 51-52.

[7]     Another issue arose when, during cross-examination, Wesen's trial counsel asked O.W. about her pretrial interview with an investigator for the People, later identified as Jerome Lorenzo. Wesen's counsel asked O.W. whether she initially told the investigator that the first time she and Wesen had sex was while she lived in Chalan Palauan, i.e., her third residence in Guam. O.W. responded, "Yes," but denied that the first sexual incident occurred at Chalan Palauan; she said that she told the investigator that Chalan Palauan was where she became pregnant. Tr. at 29 (Jury Trial, Dec. 12, 2018). The People then called Jerome Lorenzo as a rebuttal witness. The People asked Lorenzo, "[D]id [O.W.] tell you when [the CSC] first occurred?" *Id.* at 122. Wesen's counsel lodged a hearsay objection. The trial court overruled the objection, holding the question did not call for hearsay because it was not solicited for the truth of the matter asserted. Lorenzo then answered that O.W. did tell him the sexual conduct first occurred in Chalan Palauan, and his

notes from the interview reflected this. But Lorenzo explained that as his interview with O.W. progressed, it was clarified that O.W. had meant to say that Kaiser, not Chalan Palauan, was the first location. Lorenzo then amended his notes by crossing out "Chalan Palauan" and writing "Kaiser" instead. *Id.* at 123-25.

[8]     After the People rested, Wesen took the stand in his defense. Wesen testified that he believed O.W. was sixteen years old when she arrived in Guam in October 2015 and nineteen years old at the time of trial, December 2018. Wesen admitted that he and O.W. had a sexual relationship, but claimed it began on November 16, 2017, not in 2015 when O.W. moved to Guam. Wesen stated the sexual relationship began because "[t]hat's what [he and O.W.] wanted," and that O.W.'s mother—Wesen's girlfriend—had also consented to the sexual relationship between Wesen and O.W. *Id.* at 109. Wesen denied he had ever hit or otherwise physically assaulted O.W. and suggested that the allegations of violence were fed to O.W. by "[h]er aunties on her mom's side," who dislike Wesen and wanted him jailed. *Id.* at 112-13. Wesen also admitted paternity of O.W.'s child.

[9]     After both sides rested, the Superior Court instructed the jury. Wesen did not request an instruction on the defense-of-consent, and none was given *sua sponte*. Also, Wesen did not object to the following jury instruction on the elements of CSC I, Count One:

> The People must prove beyond a reasonable doubt that Weser Wesen:
>
> 1.  On or about the period between October 15, 2015 and October 14, 2016, inclusive . . . .
>
> 2.  On Guam;
>
> 3.  Intentionally;
>
> 4.  Engaged in sexual penetration, that is, sexual intercourse with O.W., *date of birth October 15, 2000*;

5.  A minor at least fourteen but less than sixteen years of age; and

6.  And the defendant is a member of the same household as O.W.

Tr. at 37-38 (Jury Trial, Dec. 13, 2018) (emphasis added).

[10]     After deliberation, the jury returned guilty verdicts on all six counts of CSC I and CSC III. The Superior Court sentenced Wesen to fifteen years of imprisonment for each of the two counts of CSC I, to run concurrently; and three years of imprisonment for each of the four counts of CSC III, to run concurrently, with credit for time served.  Wesen timely appealed.

## II.  JURISDICTION

[11]     This court has jurisdiction over appeals from a final judgment of conviction.  48 U.S.C.A. § 1421-4(a)(2) (Westlaw through Pub. L. 117-248 (2022)); 7 GCA §§ 3107, 3108(a) (2005); 8 GCA § 130.15(a) (2005).

## III.  STANDARD OF REVIEW

[12]     We review jury instructions for plain error when the defendant did not object to the instructions at trial.  *People v. Gargarita*, 2015 Guam 28 ¶ 11 (citing *People v. Felder*, 2012 Guam 8 ¶ 8).

[13]     We review the admission of evidence for plain error when the defendant did not object to the evidence at trial.  *People v. Martin*, 2018 Guam 7 ¶ 9 (citing *People v. Mendiola*, 2014 Guam 17 ¶ 23 n.2; 8 GCA § 130.50(a) (2005)).  When the defendant made a proper objection, we review the admission of evidence for abuse of discretion.  *See People v. Cruz*, 2020 Guam 11 ¶ 9 (citing *People v. Perez*, 2015 Guam 10 ¶ 19; *People v. Roten*, 2012 Guam 3 ¶ 13).

[14]     When a defendant fails to object to an alleged variance between the allegations in the indictment and the proof at trial, we review for plain error.  *See People v. Campbell*, 2006 Guam 14 ¶ 11.  Although we typically review a variance claim *de novo* given the constitutional

considerations so implicated, *see People v. Taitano*, 2015 Guam 33 ¶ 9, even constitutional errors are reviewed for plain error when not raised at trial. *Cf. United States v. Olano*, 507 U.S. 725, 731 (1993) ("'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'" (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944))).

## IV.  ANALYSIS

### A. The Trial Court Plainly Erred by Including the Victim's Birth Date in the Jury Instruction for CSC I, Count One, and Reversal is Warranted

[15]     Wesen argues the Superior Court's jury instruction on the essential elements of CSC I, Count One was plainly erroneous because the instruction included O.W.'s alleged date of birth in the instruction. Appellant's Br. 27-32 (Aug. 10, 2021). The jury was instructed that it must find Wesen "engaged in sexual penetration, that is, sexual intercourse with O.W. *(DOB: 10/15/2000)*." RA, tab 45 at 9-10 (Jury Instrs., Dec. 14, 2018) (emphasis added); Tr. at 38 (Jury Trial, Dec. 13, 2018) (same). Because Wesen did not object to this instruction, we review for plain error. *Gargarita*, 2015 Guam 28 ¶ 11. To prevail on plain error review, a defendant must show: "(1) there was an error; (2) the error is clear or obvious under current law; (3) the error affected substantial rights; and (4) reversal is necessary to prevent a miscarriage of justice or to maintain the integrity of the judicial process." *Id.* (quoting *Felder*, 2012 Guam 8 ¶ 19).

[16]     Including O.W.'s birthdate in the jury instruction was clear and obvious error under *People v. Hill*, 2018 Guam 3. There, on a similar challenge by the defendant, we held that "providing the birthdate of the alleged victim directly in the jury instruction regarding the elements of the crime is erroneous when the age of the victim is an essential element the jury needed to find for itself beyond a reasonable doubt." *Hill*, 2018 Guam 3 ¶ 12. CSC I, Count One was charged under 9

GCA § 25.15(a)(2) , which applies where sexual penetration occurs on a victim who "is at least fourteen (14) but less than sixteen (16) years of age." 9 GCA § 25.15(a)(2) (as amended by Guam Pub. L. 32-012:2 (Apr. 11, 2013)). The victim's age is an essential element of CSC I under 9 GCA § 25.15(a)(2). *Cf. Campbell*, 2006 Guam 14 ¶ 37 (recognizing age as essential element of CSC I under similar 9 GCA § 25.15(a)(1)). Thus, including O.W.'s alleged birthdate was erroneous, and the error was clear or obvious under current law.

[17]    The People concede there was clear or obvious error under *Hill* but argue that reversal is unwarranted because the error did not affect Wesen's substantial rights. Appellee's Br. at 36-37 (Sept. 10, 2021). A defendant's substantial rights are affected by an erroneous jury instruction regarding an element of the offense when it is "reasonably probable" the defendant would have been acquitted but for the instructional error. *People v. White*, 2020 Guam 19 ¶ 10; *see also Hill*, 2018 Guam 3 ¶ 13 ("[The defendant] bears the burden of demonstrating 'that the error was prejudicial (i.e., that if affected the outcome of the case).'" (quoting *Felder*, 2012 Guam 8 ¶ 22)). Wesen argues there was a reasonable probability he would have been acquitted of CSC I but for this error because there was a reasonable probability that the error convinced the jury to "abandon[] any doubts that it may have harbored about [O.W.]'s age in light of her conflicting testimony and . . . credibility." Appellant's Br. at 30.

[18]    In *Hill*, we ultimately held the instructional error harmless because "multiple witnesses" had testified to the victims' ages, and "even with zealous cross-examination of these witnesses, [trial counsel] did not challenge [the victim's] date of birth or age." 2018 Guam 3 ¶ 14. Under those facts, where the victim's alleged age was not challenged at trial, we held that "the record affirmatively shows that no prejudice could have resulted" from the birthdate inclusion error. *Id.* (quoting *State v. Baxter*, 141 P.3d 92, 95-96 (Wash. Ct. App. 2006)). Here, O.W.'s birthdate was

a contested issue at trial. Wesen's counsel objected to the prosecutor's attempt to establish her age and vigorously cross-examined O.W. about her age. And O.W.'s own testimony could have supported a jury finding she was a year older than the People had believed, and thus outside the age range to which 9 GCA § 25.15(a)(2) applies. O.W. testified several times that she believed herself to be nineteen years old at the time of trial in December 2018. She also testified that she turned eighteen years old on October 15, 2017, that she was fifteen years old when she arrived in Guam in September 2015, and that she turned sixteen years old in October 2015. If this timeline were accurate, it would suggest O.W. was born in October 1999. And if O.W. were born in October 1999, she would have been at least sixteen years old for all or nearly all the period between October 15, 2015, through October 14, 2016, i.e., the period in which Wesen is accused of violating 9 GCA § 25.15(a)(2). If O.W. were born in October 1999, then 9 GCA § 25.15(a)(2) would not apply.

[19]     The People respond by referring to evidence supporting the premise that O.W. was born in 2000, not in 1999, and that she was in fact fifteen years old throughout the period applying to CSC I, Count One. Appellee's Br. at 37. The People note that, notwithstanding the contradictory testimony described above, O.W. explicitly testified she was born on October 15, 2000. *See id.* The People also note they introduced O.W.'s passport and her child's birth certificate into evidence, and these documents list O.W.'s birthdate as October 15, 2000. The People thus reason that because there was evidence to support the jury's age finding, and because "any inconsistency regarding the birth date would be for the jury to resolve themselves," then Wesen's substantial rights were not affected by the error. *Id.* In so arguing, the People appear to rely on sufficiency-of-evidence principles. *Cf. People v. John*, 2016 Guam 41 ¶ 47 ("[C]redibility determinations, as

well as the weight to be attributed to the evidence, are soundly within the province of the jury's trial function." (quoting *State v. Brumfield*, 639 So. 2d 312, 316 (La. Ct. App. 1994))).

[20]     But evidentiary sufficiency is not determinative of whether a defendant's substantial rights were affected by an erroneous jury instruction regarding an essential element of an offense; "[i]n the context of alleged instructional error, a defendant's substantial rights are violated where it is reasonably probable he would have been acquitted 'had the trial court properly instructed the jury' on the elements of the offense," *White*, 2020 Guam 19 ¶ 10 (quoting *People v. Ramey*, 2019 Guam 11); *see also People v. Perry*, 2009 Guam 4 ¶ 49 ("[W]here '[u]pon review of the record, it would appear that the jury was free to judge for itself the weight of the evidence presented and the credibility of the testifying witnesses,' then there is no error affecting substantial rights." (quoting *People v. Moses*, 2007 Guam 5 ¶ 21)).  The People's evidence, though admittedly legally sufficient to sustain a finding that O.W. was born on October 15, 2000, was not overwhelming given O.W.'s own contradictory testimony regarding her age.  Based on the conflicting evidence about O.W.'s age, we cannot say that despite the inclusion of O.W.'s date of birth in the jury instruction, "it would appear that the jury was free to judge for itself the weight of the evidence presented and the credibility of the testifying witnesses." *See Perry*, 2009 Guam 4 ¶ 49 (quoting *Moses*, 2007 Guam 5 ¶ 21).  Rather, we agree with Wesen that it was reasonably likely that the jury understood the inclusion of O.W.'s birthdate in the jury instruction as a determination that O.W. was born on October 15, 2000, and that the essential element of age in 9 GCA § 25.15(a)(2) was thus satisfied. Because it is reasonably probable that the erroneous instruction affected the outcome of the case, we conclude that reversal of this conviction is necessary to prevent a miscarriage of justice.

[21]     Wesen has shown plain error in the jury instruction for CSC I, Count One, and we thus reverse that conviction.  Wesen's remaining five convictions are unaffected by this decision.  The

victim's age was not an element of CSC I, Count Two under 9 GCA § 25.15(a)(6), nor of CSC III, Counts One, Two, Three, or Four under 9 GCA § 25.25(a)(2), so including O.W.'s birthdate in the jury instructions for those offenses was not erroneous.[1]  We proceed to analyze Wesen's other claims.

## B. The Trial Court Erred, but did not Plainly Err, by not Instructing the Jury on the Defense of Consent

[22]   Wesen next argues the trial court plainly erred by failing to instruct the jury on the defense of consent.  Appellant's Br. at 7-13.  Wesen's trial counsel neither requested this instruction nor objected to its omission, so our review is again for plain error.  *Gargarita*, 2015 Guam 28 ¶ 11.  Again, to succeed on plain error review, Wesen must show: "(1) there was an error; (2) the error is clear or obvious under current law; (3) the error affected substantial rights; and (4) reversal is necessary to prevent a miscarriage of justice or to maintain the integrity of the judicial process." *Id.* (quoting *Felder*, 2012 Guam 8 ¶ 19).

[23]   To decide whether the lack of a defense-of-consent instruction was erroneous, we first consider whether that defense could have applied to Wesen's remaining convictions.  CSC I, Count Two was charged under 9 GCA § 25.15(a)(6), which criminalizes sexual penetration where "the actor causes personal injury to the victim and *force or coercion* is used to accomplish sexual penetration." 9 GCA § 25.15(a)(6) (emphasis added).  And CSC III, Counts One, Two, Three, and Four were charged under 9 GCA § 25.25(a)(2), which criminalizes sexual penetration where "*force or coercion* is used to accomplish the sexual penetration."  9 GCA § 25.25(a)(2) (2005) (emphasis added).  Thus, each of Wesen's five remaining convictions required the People to prove that Wesen

---

[1] CSC I under 9 GCA § 25.15(a)(6) criminalizes sexual penetration where "the actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration."  CSC III under 9 GCA § 25.25(a)(2) (2005) criminalizes sexual penetration where "force or coercion is used to accomplish the sexual penetration."  Unlike CSC I under 9 GCA § 25.15(a)(2), these statutory provisions do not refer to the age of the victim at the time of sexual penetration.

used "force or coercion" to accomplish sexual penetration. The defense of consent is available to a defendant to negate the claim he used "force or coercion" to accomplish his acts.[2] *See, e.g.*, *People v. Waltonen*, 728 N.W.2d 881, 887-88 (Mich. Ct. App. 2006); *People v. Haywood*, 515 N.E.2d 45, 50 (Ill. 1987); *State v. Brigham*, 638 A.2d 1043, 1046 (R.I. 1994); *see also* 9 GCA § 7.64(a) (2005) ("The consent of the victim to conduct charged to constitute an offense or to the result thereof is a defense if such consent precludes the infliction of the harm or evil sought to be prevented by the law defining the offense."). The defense of consent was therefore available to Wesen on the five remaining charges.

[24]    The next question is whether the trial court had to instruct on this defense, even though Wesen's counsel did not request such an instruction. As a general rule, courts do not have to instruct on "every conceivable defense potentially suggested by the evidence." *People v. Camacho*, 1999 Guam 27 ¶ 20 (citing *United States v. Span*, 970 F.2d 573, 578 (9th Cir. 1992)). Still, regardless of defendant's failure to request a specific defense, courts must instruct the jury on a theory of defense "if there is evidence upon which the jury could rationally sustain the defense." *People v. Cox*, 2018 Guam 16 ¶ 10 (quoting *People v. Root*, 2005 Guam 16 ¶ 28); *see also Guam v. Agualo*, 948 F.2d 1116, 1117 (9th Cir. 1991) (per curiam) ("A defendant is entitled to jury instructions on any defense providing a legal defense to the charges against him and 'which has some foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility.'" (quoting *United States v. Sotelo-Murillo*, 887 F.2d 176, 178 (9th Cir. 1989))).

---

[2] The People argue that consent is unavailable as a defense to CSC I, Count One under 9 GCA § 25.15(a)(2) because that offense "was premised on the victim being between fourteen years old and sixteen years old." Appellee's Br. at 9. Because we have reversed that conviction on other grounds, we need not decide that issue here.

[25] Although this court has not decided the issue, several jurisdictions—including Michigan, whose cases interpreting Michigan CSC statutes are persuasive because Guam's CSC statutes were patterned after Michigan's[3]—have held that in criminal sexual conduct prosecutions, where there is evidence on which a jury could rationally sustain the defense of consent, the jury must be instructed on that defense. *See, e.g.*, *People v. Hearn*, 300 N.W.2d 396, 397-98 (Mich. Ct. App. 1980); *State v. Suka*, 777 P.2d 240, 243 (Haw. 1989); *State v. Koperski*, 578 N.W.2d 837, 846 (Neb. 1998).

[26] There was evidence here on which the jury could have rationally sustained the defense of consent: Wesen testified in his own defense and asserted that any sex between he and O.W. was consensual. While the jury was not required to credit Wesen's account, it could have rationally done so. Wesen's theory of the case therefore had "some foundation in the evidence." *See Agualo*, 948 F.2d at 1117 (quoting *Sotelo-Murillo*, 887 F.2d at 178). On direct examination, Wesen testified that he and O.W. had a continuous sexual relationship beginning on November 16, 2017. Thus, his claim that the sexual relationship was consensual—i.e., that he did not use "force or coercion" to accomplish that relationship—was his primary theory of defense to CSC I, Count Two and to CSC III, Counts Three and Four, all of which the People allege to have occurred after November 16, 2017. *See* RA, tab 12 at 1-2 (Indictment, Oct. 29, 2018). Since there was evidence in the record to support Wesen's defense of consent, and Wesen was relying on that defense, the trial court erred in not instructing the jury on the defense of consent.

[27] But while the trial court's lack of instruction was erroneous, we conclude the error did not affect Wesen's substantial rights. As above, a defendant's substantial rights are violated where it is reasonably probable the defendant would have been acquitted had the trial court properly

---

[3] *See People v. Ehlert*, 2019 Guam 3 ¶ 20 (citing *People v. Cummins*, 2010 Guam 19 ¶ 21).

instructed the jury. *White*, 2020 Guam 19 ¶ 10. There was little probability that Wesen would have been acquitted even with a defense-of-consent instruction. We have held that "a single jury instruction should not be judged in artificial isolation. Instead, instructions should be considered and reviewed as a whole." *Gargarita*, 2015 Guam 28 ¶ 12 (quoting *People v. Jones*, 2006 Guam 13 ¶ 28). While the trial court did not instruct the jury on the defense of consent, the court instructed on the definition of "force or coercion." *See* RA, tab 45 at 8-9 (Jury Instrs.); Tr. at 37 (Jury Trial, Dec. 13, 2018). The trial court's definition tracked the definition provided by 9 GCA § 25.10(a)(2) (2005),[4] which includes five non-exhaustive situations which constitute the use of "force or coercion." As relevant here, those examples include "when the actor overcomes the victim through the actual application of physical force or physical violence" and "when the actor coerces the victim to submit by threatening to use force or violence on the victim and the victim believes that the actor has the present ability to execute these threats." *See* RA, tab 45 at 9 (Jury Instrs.); 9 GCA § 25.10(a)(2)(A)-(B) (2005)).

[28]    The People assert the "force or coercion" instruction obviated the need for a separate defense-of-consent instruction because non-consent is an inherent component of force or coercion. *See* Appellee's Br. at 10-12. The People argue that a rational jury could not have found that Wesen used force or coercion to induce O.W. into sex and also have found that O.W. consented to the acts; these are mutually exclusive. Given our analysis above, we disagree with the People's position that the "force or coercion" instruction relieved the trial court of a duty to instruct on the defense of consent; the instruction should still have been provided. That said, we agree with the People that the lack of a defense-of-consent instruction here was a harmless error, not affecting Wesen's substantial rights.

---

[4] The definition of "force or coercion" is now found in 9 GCA § 25.10(a)(3) per amendments made in Guam Public Law 36-101:2 (June 15, 2022).

**[29]**    Several jurisdictions have held that "consent" and "force or coercion" (or the analogous concept of "forcible compulsion") are mutually exclusive, with a finding of one serving as a rejection of the other. *See, e.g.*, *State v. Knapp*, 486 P.3d 113, 118 (Wash. 2021) (en banc) ("[T]he issue of consent inherently exists within the element of forcible compulsion."); *People v. Jansson*, 323 N.W.2d 508, 514 (Mich. Ct. App. 1982) ("[T]he question of consent is, of necessity, addressed in a determination as to whether the act was committed by force or coercion."); *Day v. Commonwealth*, 174 S.W.3d 496, 499 (Ky. Ct. App. 2004) ("'[L]ack of consent' is an inescapable result of 'forcible compulsion.'"); *State v. Klaudt*, 772 N.W.2d 117, 125 (S.D. 2009) ("Because force or coercion *and* consent cannot co-exist, it is implicit that if force or coercion is proven beyond a reasonable doubt, lack of consent is, by necessity, also proven beyond a reasonable doubt.").

**[30]**    We agree with these courts. A rational jury could not have found both that the sex between Wesen and O.W. was consensual *and* that Wesen used force or coercion to accomplish those acts. The jury heard testimony from Wesen that the sex was consensual, and testimony from O.W. that the sex occurred under force or threat of force. In convicting Wesen, the jury found that Wesen used force or coercion to accomplish sex with O.W. and that these acts were not consensual. There was no reasonable probability that the jury would have acquitted Wesen even with a defense-of-consent instruction; the jury considered, but rejected, the possibility of a consensual relationship. Thus, while the defense-of-consent instruction still should have been given, Wesen would likely not have been acquitted but for its omission; thus, Wesen's substantial rights were not affected by this error. *Cf. People v. Damian*, 2016 Guam 8 ¶ 34. Wesen's challenge therefore fails the third prong of the plain error test, and we will not reverse his remaining convictions on this error.

**C. The Trial Court Did Not Abuse its Discretion by Admitting the Testimony of the People's Investigator**

[31]     Wesen next argues the trial court erred when it allowed the People to call Jerome Lorenzo as a rebuttal witness to testify about statements O.W. made to him during a pretrial interview. Appellant's Br. at 18-20.  Wesen asserts that Lorenzo's testimony was inadmissible hearsay.  *Id.*

[32]     Generally, hearsay evidence is inadmissible in the courts of Guam.  *See* Guam R. Evid. 802.  The People argue that Lorenzo's testimony was not hearsay because it was evidence of O.W.'s prior consistent statement, admissible under Guam Rule of Evidence ("GRE") 801(d)(1)(B).  Under that rule, a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive."  Guam R. Evid. 801(d)(1)(B).  The prior consistent statements of a witness are admissible against a party's claim that the witness's testimony was a "'recent fabrication,' concocted for trial."  *People v. Camaddu*, 2015 Guam 2 ¶ 62 (quoting 2 Wharton's Criminal Evidence § 9:39 (15th ed. 1997)).  A claim that a witness was fabricating his or her testimony may be "express or implied."  *See id.* ¶ 63.

[33]     We addressed this same issue—whether the trial court erred by allowing the People to call an investigator to testify about a pretrial conversation with the complaining witness—in *People v. Camaddu*, 2015 Guam 2.  In *Camaddu*, the People called a witness to testify about prior consistent statements made by the victim during a pretrial interview.  *See id.* ¶¶ 56-58.  The victim was extensively cross-examined about inconsistencies in her trial testimony, which amounted to an "express charge . . . of [the victim's] recent fabrication, improper influence, or motive to lie."  *Id.* ¶ 63.  Under this circumstance, we held the trial court did not abuse its discretion in allowing the

People to call a witness to provide evidence of the victim's prior statements "about the various details . . . that *were* consistent with what [the victim] testified to at trial." *Id.* ¶ 64.

[34] O.W., like the victim in *Camaddu*, was subject to extensive cross-examination. This cross-examination tested the chronology of O.W.'s narrative, including the location where Wesen first had sex with her. Wesen's counsel asked O.W. whether she recalled telling the People's investigator, "on Monday," that the first time Wesen had sex with her was in Chalan Palauan. Tr. at 29 (Jury Trial, Dec. 12, 2018). Wesen's counsel asked O.W. whether that statement was true, and then asked her, "[W]hy did you say that to the person from the Attorney General's Office on Monday?" *Id.* We read this sequence as Wesen impliedly charging O.W. with fabricating her narrative at trial. These cross-examination questions challenged O.W.'s testimony that Wesen had sex with her when she lived in Kaiser, Dededo, i.e., before she lived in Chalan Palauan. Further, by highlighting that O.W. allegedly told Lorenzo something other than her trial testimony in a conversation "on Monday," i.e., near the time of trial, Wesen impliedly charged O.W. with fabricating her trial testimony.

[35] Under an implied charge of fabrication, and following cross-examination of the declarant (O.W.), the People were not precluded by hearsay rules from calling Lorenzo to testify about O.W.'s pretrial statements consistent with the statements she made at trial. *Cf. Camaddu*, 2015 Guam 2 ¶ 64. O.W. had testified that sex with Wesen began while she lived in Kaiser. Tr. at 25-26 (Jury Trial, Dec. 11, 2018). On cross-examination, she reaffirmed that the sexual acts began while she lived in Kaiser. Tr. at 21 (Jury Trial, Dec. 12, 2018). Lorenzo's rebuttal testimony then revealed that his understanding of the conversation with O.W. was also that Wesen's sexual acts began while O.W. lived in Kaiser. *Id.* at 123-25. We agree with the People: Lorenzo's testimony

reflected O.W.'s prior consistent statement, and so it was not hearsay by virtue of GRE 801(d)(1)(B). The trial court did not abuse its discretion in admitting this testimony.

### D. The Trial Court Did Not Plainly Err by Admitting the Victim's Testimony on Wesen's Uncharged Misconduct

[36]   Wesen next argues that the trial court plainly erred by admitting O.W.'s testimony on uncharged acts of criminal sexual conduct. O.W.'s testimony advanced the claim that Wesen had sex with her continuously from shortly after she arrived in Guam, in late 2015, until he was arrested in October 2018. Extrapolating from O.W.'s testimony she and Wesen had sex two or three times per week across a three-year period, Wesen argues that O.W. testified about several hundred acts of criminal sexual conduct, although Wesen was charged with only six offenses. Appellant's Br. at 14. Wesen argues this testimony created a material variance between the indictment and the proof adduced at trial, violating his constitutional rights. *Id.* at 25-27. He also argues that O.W.'s testimony about uncharged misconduct was "prior bad acts" evidence under GRE 404(b), which should have been excluded for several reasons. *Id.* at 13-16.

#### 1. The alleged "material variance" was not plainly erroneous

[37]   We first consider Wesen's variance theory. Wesen argues that although he was indicted for six offenses, each charged across a wide range of time, O.W.'s testimony suggested that more than one act of criminal sexual conduct occurred within each time range. *See id.* at 25-27. Wesen thus argues he was "left to guess at the one bad act that sustained the government's specific counts against him," which amounted to unfair surprise at trial. *Id.* at 26. Although we typically analyze allegations of constitutional error under the *de novo* standard, *Taitano*, 2015 Guam 33 ¶ 9, Wesen did not raise this issue at trial, so our review is for plain error. *See, e.g.*, *People v. Diaz*, 2007 Guam 3 ¶ 38; *United States v. Hugs*, 384 F.3d 762, 766 (9th Cir. 2004) (citing *United States v. Choy*, 309 F.3d 602, 607 (9th Cir. 2002)).

**[38]** A variance analysis consists of "two separate but related inquiries." *Taitano*, 2015 Guam 33 ¶ 11. First, "[t]o the extent that the variance concerns a lack of proof at trial regarding the essential elements of an indictment, it functions as an attack on the sufficiency of evidence supporting a conviction." *Id.* (citing *Diaz*, 2007 Guam 3 ¶ 10; *United States v. Antonakeas*, 255 F.3d 714, 721 (9th Cir. 2001)). This analysis is unnecessary here, because the issue raised by Wesen is not a *lack* of proof of the charged offenses—it is instead extraneous proof of other acts. Wesen has not argued there was insufficient evidence to support his convictions, so we need not analyze this issue.[5]

**[39]** The second inquiry is more applicable—we have held that a variance "constitutes reversible error if it affects the substantial rights of a defendant, including proper notice of charges and protection against double jeopardy." *Id.* ¶ 11 (citing *Berger v. United States*, 295 U.S. 78, 82 (1935)). "In this sense, a claim of variance also functions as a challenge based on the deprivation of due process rights under the Fifth Amendment of the United States Constitution, made applicable to Guam by the Organic Act." *Id.* (citing *United States v. Tsinhnahijinnie*, 112 F.3d 988, 992 (9th Cir. 1997); 48 U.S.C.A. § 1421b(u)). Wesen cites no case law supporting his premise that surplus evidence of uncharged misconduct creates a material variance between indictment and the proof at trial. But even if we assume there was a variance, and the variance was erroneous, it was not plainly erroneous—Wesen's substantial rights were not affected by the alleged error.

---

[5] Wesen comes close to making such an argument, suggesting that "[w]ere one to remove the prior-bad-acts evidence from the evidence, there would be little, identifiable evidence of a substantive nature in support of the charges . . . ." Appellant's Br. at 25 (Aug. 10, 2021). We disagree. O.W. testified that Wesen had sex with her at least once during each of the time frames charged in the indictment, and that she did not want to have sex with him during these incidents but assented out of fear he would beat her. As the "direct evidence of one witness who is entitled to full credit is sufficient proof of any fact," *People v. Campbell*, 2006 Guam 14 ¶ 40 (citation omitted); *cf.* 9 GCA § 25.40 (2005) ("The testimony of a victim need not be corroborated in prosecutions under §§ 25.15 through 25.35), O.W.'s testimony about the *charged* acts was legally sufficient.

[40] In *People v. Taitano*, we explained two circumstances in which a defendant's substantial rights may be affected by a variance: (1) where the variance takes the defendant by surprise and hinders his or her ability to present a defense, or (2) where the variance exposes the defendant to the risk for another prosecution for the same offense. 2015 Guam 33 ¶ 18. Although Wesen asserts that he was surprised by the evidence, we are unpersuaded. Wesen was, or should have been, aware before trial that O.W. reported to the police that Wesen had committed weekly acts of criminal sexual conduct against her across several years. That information was in the Declaration of Charles Kinnunen, attached to the Magistrate's Complaint, *see* RA, tab 1 at 4 (Magis. Compl., Oct. 20, 2018), and was also relayed in the discovery transmitted by the People to Wesen before trial, *see* Disc. Submissions (Filed Under Seal) at 1-2 (Nov. 1, 2021). Thus, we are not persuaded that Wesen was surprised by this evidence.

[41] We are also unpersuaded that this evidence hindered Wesen's ability to prepare a defense. Wesen's trial defense was that (1) any claim he had sex with O.W. before November 16, 2017, was false, and (2) any claim he had sex with O.W. after November 16, 2017, may have been true, but he did not use "force or coercion" to do so. These defenses were not based on disproving specific acts or providing an alibi for specific dates, but rather denied that he had committed any offense. Although Wesen appears to suggest that a different defense strategy *could* have been employed had Wesen anticipated O.W.'s testimony about other, uncharged acts, he does not explain what that strategy would have been or provide evidence that Wesen's trial counsel would have used this strategy but for the alleged surprise. Wesen's mere speculation that his defense might have proceeded differently does not prove his substantial rights were affected.

[42] We also find no harm to Wesen's substantial rights based on exposure to further prosecution. In their brief, the People cite *State v. Muhm*, 775 N.W.2d 508, 515 (S.D. 2009), to

suggest the People "would be barred from reprosecuting the offenses occurring during that period of time." Appellee's Br. at 35. We agree with the People: where the People charge a defendant with committing criminal sexual conduct against a particular victim within a range of time, they are barred by double jeopardy principles from bringing a subsequent prosecution against the defendant for other acts of criminal sexual conduct against the same victim that also occurred within that range of time. *See Muhm*, 775 N.W.2d at 515; *State v. Martinez*, 541 N.W.2d 406, 415-16 (Neb. Ct. App. 1995); *State v. Fawcett*, 426 N.W.2d 91, 96 (Wisc. Ct. App. 1988); *State v. St. Clair*, 418 A.2d 184, 189 (Me. 1980) (quoting *State v. Terroni*, 270 A.2d 75, 76 (Me. 1970)). Thus, as Wesen cannot be prosecuted for other acts of criminal sexual conduct against O.W. within the same time frames charged in this case, different from what was already charged within the underlying indictment, he faces no exposure to further prosecution based on the uncharged misconduct.[6] We therefore hold that even if the alleged variance was erroneous, it was not plainly erroneous, and it is not a basis for reversal.

### 2. The trial court erred in admitting the "prior bad acts" evidence, but the error was not plainly erroneous

[43]     The People offer several cases to argue that the bad-acts evidence contemplated in this case is outside the scope of both GRE 404(b) and 413.[7] Appellee's Br. at 16-19. However, none of the cases cited by the People are from jurisdictions that have adopted an analogue to GRE 413, which itself is modeled on Federal Rule of Evidence ("FRE") 413. *See People v. Chinel*, 2013 Guam 24

---

[6] This statement should not be interpreted as precluding a retrial for the CSC I, Count One charge that we reverse in Part IV(A) of this opinion. *See People v. Angoco*, 2004 Guam 11 ¶ 19 ("[The] general rule [is] that the Double Jeopardy Clause does not bar the retrial of a defendant who has succeeded in getting his conviction set aside for error in the proceedings below." (quoting *Lockhart v. Nelson*, 488 U.S. 33, 39 (1988))).

[7] Rule 404(b) provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes . . . ." Guam R. Evid. 404(b). Rule 413 pertains to the admissibility of evidence of similar crimes in criminal sexual conduct cases. *See* Guam R. Evid. 413.

¶ 18. Reviewing the cases cited by the People, we cannot help but feel sympathetic to the view expressed by Chief Justice Minton of the Kentucky Supreme Court that these jurisdictions may have been too quick to carve an exception to Rule 404(b) in these instances. *See Jackson v. Commonwealth*, No. 2019-SC-0597-MR, 2021 WL 2618168, at *7 (Ky. June 17, 2021) (Minton, C.J., concurring) (unpublished) ("While same victim, same act context might have some general tendency to be relevant to circumstantial issues[,] . . . the primary and predominant *use* of the evidence still controls and must still be nonpropensity, assuming the words of [Rule] 404(b) have any meaning and effect at all.").

[44]    Moreover, looking to federal caselaw, where Rule 413 is applicable, those courts seem inclined to classify this type of evidence as admissible per FRE 413. *See, e.g.*, *United States v. Sanchez*, 42 F.4th 970, 975-76 (8th Cir. 2022), *petition for cert. filed* (holding evidence of uncharged sexual conduct against the same victim was admissible under FRE 413); *United States v. Sioux*, 362 F.3d 1241, 1245-47 (9th Cir. 2004) (holding FRE 413 applies to sexual conduct that occurs after the conduct charged within the indictment but is similar to the charged conduct). Given that GRE 413 was based on FRE 413, along with our own reading of the Rules of Evidence, we hold that this type of conduct falls within the scope of GRE 413.

[45]    Sticking with federal caselaw, FRE 413 provides a "specific admissibility standard in sexual assault cases," that replaces Rule 404(b)'s general criteria. *United States v. Meacham*, 115 F.3d 1488, 1491 (10th Cir. 1997). Similarly, GRE 413 supersedes GRE 404(b) in Guam; that is to say, if evidence is admissible under GRE 413, then GRE 404(b) no longer need be considered. *Chinel*, 2013 Guam 24 ¶¶ 21-22. Therefore, we confine our analysis to whether this evidence could have been admitted under GRE 413.

**[46]** In general, GRE 413 allows into evidence acts of sexual conduct by the defendant in cases where the defendant has been charged with sexual assault. However, in *People v. Chinel*, this court issued two tests that must be met for evidence to be admitted. 2013 Guam 24. The initial test provides as follows:

> First, the defendant in the present case must be accused of sexual assault. Second, the evidence proffered must be evidence of the defendant's commission of another past act of sexual assault. Third, the past act must be relevant, meaning that its existence must make any fact at issue more or less probable than if such evidence were excluded.

*Id.* ¶ 25 (internal citations omitted). The first two of these requirements can be summarily dispensed with—Wesen stands accused of CSC, and the objected-to evidence is of alleged acts of rape, which is clearly sexual assault. As for relevancy, nowhere does Wesen dispute the idea that O.W.'s testimony here is relevant. Indeed, he even admits that the incidents she described were "indistinguishable" from the ones in the charged indictment. Appellant's Br. at 16; Appellant's Reply Br. at 4 (Sept. 17, 2021). Given that O.W.'s testimony reflected similar events happening contemporaneously with the charged conduct, we find her testimony on this point quite relevant.

**[47]** Yet, even when evidence qualifies under GRE 413, *Chinel* requires courts to conduct a GRE 403 analysis using framework as provided in *United States v. LeMay*. *Chinel*, 2013 Guam 24 ¶ 39 (citing *United States v. LeMay*, 260 F.3d 1018, 1028 (9th Cir. 2001)). In their brief, the People argue that several of the *LeMay* factors were present, and that the evidence therefore survived a GRE 403 balancing test. Appellee's Br. at 20-21. Under a normal analysis, whether this is true is beside the point; *Chinel* requires the *trial court* to conduct a "searching inquiry" into whether GRE 403 is satisfied. 2013 Guam 24 ¶ 39. That did not happen here, and so there was an error in allowing the testimony. *See People v. Santos*, 2021 Guam 12 ¶¶ 50-51.

**[48]**     At the same time, there is no indication that Wesen ever objected to the offending testimony.  This means that to warrant reversal, this mistake must rise to the level of plain error.  *See id.* ¶ 53.  At least two of the plain error requirements are unmet here.  First, as even Wesen concedes, this court has not previously addressed whether acts that were intrinsic to or inextricably linked to the charges were exempt from GRE 413 and 404(b).  *See* Reply Br. at 2-3.  Indeed, prior to this case, this court had not clarified if uncharged acts of sexual assault could be allowed under GRE 413, GRE 404(b), or come in irrespective of both rules.  All these options had legitimate support in jurisdictions to which this court could reasonably look to for persuasive precedent.  Therefore, the trial court's mistake here was not "clear or obvious under current law," and so it cannot be plainly erroneous to warrant reversal.  *See Gargarita*, 2015 Guam 28 ¶ 11.

**[49]**     Even assuming the law was clear and obvious, Wesen cannot show the trial court's decision to allow this evidence affected his substantial rights.  The People argue that in pretrial discovery, they disclosed to Wesen parts of a police report containing O.W.'s allegations that he raped her several times a week for an extended period of time.  Appellee's Br. at 20.  The discovery excerpts disclosed to this court confirm this assertion.  Disc. Submissions (Filed Under Seal) at 1-2 (Nov. 1, 2021).  As Wesen was provided with "a summary of the substance of [the] testimony that [was] expected to be offered," he cannot claim a harm to his substantial rights regarding the notice requirement.  *See* Guam R. Evid. 413(b).

**[50]**     As for the substance of a GRE 403 balancing, we are likewise unconvinced that Wesen suffered a harm to his substantial rights.  He concedes the acts were "indistinguishable" from acts charged.  Appellant's Br. at 16; Reply Br. at 4.  These events happened contemporaneously with the acts charged.  O.W.'s testimony was that she was assaulted frequently.  There were no clear intervening circumstances.  Finally, to exclude this testimony would require O.W. to recall only

specific incidents to prove sexual assault, something this court has repeatedly said is unnecessary. *See, e.g.*, *Taitano*, 2015 Guam 33 ¶ 16. Therefore, it appears that every *LeMay* factor is present here, and this evidence would have survived a GRE 403 balancing test. *See Chinel*, 2013 Guam 24 ¶ 36 (quoting *LeMay*, 260 F.3d at 1027-28).[8] Thus, there was no harm to Wesen's substantial rights here either.

## V.  CONCLUSION

[51]     The Superior Court plainly erred when it included O.W.'s alleged date of birth in its jury instruction on the essential elements of CSC I, Charge One, Count One. That conviction is therefore **REVERSED**. The Superior Court did not plainly err by omitting a defense-of-consent jury instruction, did not abuse its discretion in admitting the rebuttal testimony of Jerome Lorenzo, and did not plainly err in admitting O.W.'s testimony about uncharged misconduct by Wesen under any of the theories asserted. Therefore, the remaining convictions for CSC I, Charge One, Count Two, and CSC III, Charge Two, Counts One through Four, are **AFFIRMED**. We **REMAND** to the Superior Court for further proceedings not inconsistent with this opinion.



|  |  |
|---|---|
| /s/ | /s/ |
| ROBERT J. TORRES | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |

/s/
F. PHILIP CARBULLIDO
Chief Justice

---

[8] The *LeMay* factors being:

(1) the similarity of the prior acts to the acts charged;
(2) the closeness in time of the prior acts to the acts charged;
(3) the frequency of the prior acts;
(4) the presence or lack of intervening circumstances; and
(5) the necessity of the evidence beyond the testimonies already offered at trial.

*Chinel*, 2013 Guam 24 ¶ 36 (quoting *United States v. LeMay*, 260 F.3d 1018, 1027-28 (9th Cir. 2001)).