
# IN THE SUPREME COURT OF GUAM

**PEOPLE OF GUAM,**
Plaintiff-Appellee,

**v.**

**PARIS CHRISTIAN REYES SHARPE,**
Defendant-Appellant.

Supreme Court Case No. CRA23-012
Superior Court Case No. CF0265-23

## OPINION

## Cite as: 2024 Guam 12

Appeal from the Superior Court of Guam
Argued and submitted on May 17, 2024
Hagåtña, Guam

Appearing for Defendant-Appellant:
William C. Bischoff, *Esq.*
Assistant Public Defender
Public Defender Service Corporation
779 Rte. 4
Sinajana, GU 96910

Appearing for Plaintiff-Appellee:
Christine S. Tenorio, *Esq.*
Assistant Attorney General
Office of the Attorney General
590 S. Marine Corps Dr., Ste. 801
Tamuning, GU 96913



**E-Received**
12/26/2024 5:12:35 PM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**MARAMAN, J.:**

[1]      Defendant-Appellant Paris Christian Reyes Sharpe appeals his conviction for one count of Third Degree Criminal Sexual Conduct ("CSC III") following a jury verdict. At trial, Sharpe's defense was that the allegation against him was fabricated and that the complaining witness, R.P., falsely accused him. On appeal, Sharpe raises two issues concerning the interplay between the Sixth Amendment and the attorney-client privilege. He also argues the trial court erred by admitting R.P.'s prior consistent statements, which did not satisfy the requirements of Guam Rule of Evidence ("GRE") 801(d)(1)(B). Because we find that the trial court abused its discretion when it admitted inadmissible hearsay as a prior consistent statement, we vacate the judgment and remand for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

[2]      Sharpe was arrested and accused of committing criminal sexual conduct against R.P. The affidavit of probable cause supporting the magistrate's complaint was based on a written statement R.P. gave to police at the Dededo Precinct on April 11, 2023. Sharpe was eventually indicted by a grand jury on a single count of CSC III that was alleged to have occurred between March 1 and March 31, 2023.

[3]      At one point prior to the alleged assault, R.P. and Sharpe were in an intimate relationship that involved consensual sex. The intimate relationship began in late 2022 and ended around February 2023. After the intimate relationship ended, Sharpe and R.P. began cohabiting in the same residence in Chalan Pago. R.P. shared the residence with her uncle, but Sharpe's name was also on the lease. There is no dispute that the dynamic between Sharpe and R.P. deteriorated in

2023, with her calling the police on him multiple times. On at least one occasion, R.P. asked for Sharpe to be removed from the residence, but the police responded that they could not because Sharpe's name was on the lease. On April 2, 2023, Sharpe was removed from the residence by police and transported to Hågat. It is unclear why the police felt they now had the authority to escort Sharpe from the premises; it may have been due to allegations of property damage done by Sharpe. *See* Transcript ("Tr.") at 62-64, 119 (Jury Trial, June 14, 2023) (mentioning property damage to a door and "bedroom set").

[4]     The timeline of events—especially the date of the alleged criminal sexual conduct—is hotly contested. At trial, the prosecution's theory was that the CSC occurred early in the morning of April 2, 2023. On direct examination, R.P. testified that she had taken a shower early one morning and was walking down the hallway from the bathroom to her bedroom. She said Sharpe grabbed her from behind, with his left hand on her throat and right hand on her mouth. She then testified that Sharpe took her into an empty room, pushed her into the wall, and took off her shorts. Finally, R.P. testified that Sharpe penetrated her from behind and then ejaculated on her. Sharpe defended the charge on the grounds that the allegations were fabricated by R.P. *See* Tr. at 49 (Jury Trial, June 13, 2023) (Sharpe's opening statement).

[5]     A few dates are not in dispute, which can serve as reference points. The first is April 2, 2023, when police were called to the residence in Chalan Pago, and Sharpe was escorted from the premises. No report of CSC was made to police. The next day, on April 3, R.P.'s son G.C. drove her to the Central Precinct. R.P. testified she reported a sexual assault at the Central Precinct, but the police have no record of this. Neither her son nor the police could corroborate the claim that R.P. reported a sexual assault at the Central Precinct. As established by multiple sources, on that same day, G.C. also drove R.P. to the Guam Legal Services Corporation ("GLSC") office. But

there is also controversy about what R.P. initially told GLSC, including whether she reported that she had been sexually assaulted.[1] On April 5, R.P. signed a declaration filed in the Superior Court supporting a petition for a restraining order against Sharpe. On April 6, R.P. contacted Healing Hearts Crisis Center, and an intake was scheduled. Healing Hearts conducted an intake with R.P. on April 11. That same evening, following the intake at Healing Hearts, R.P. went to the Dededo Precinct where Officer Riccalynn Lizama interviewed her. R.P. also gave a written statement to Officer Lizama.

[6]     At trial, Sharpe pointed to the discrepancies in the dates reported by R.P. to support an inference that the allegations were fabricated. He highlighted that R.P. did not report CSC to the police when they removed Sharpe from the residence on April 2, and that the earliest record of an allegation was in R.P.'s declaration dated April 5, which stated the sexual assault had occurred "on or about March 20." *See* Tr. at 89 (Jury Trial, June 14, 2023). On direct examination, Healing Hearts Program Manager Shirley Untalan testified that during her April 11 intake, R.P. alleged the criminal sexual conduct occurred early in the morning of April 2. But Officer Lizama testified that when she interviewed R.P. on April 11—within hours of the Healing Hearts intake—R.P. could not give an exact date of the assault and only referenced two weeks at the end of March.

A. Challenged Hearsay Testimony

[7]     Besides impeaching R.P. on the chronology of events, Sharpe highlighted discrepancies between her trial testimony and her statement to Healing Hearts. The main point of impeachment was that R.P. told Healing Hearts she had been penetrated from the front (with her back to the wall), while she testified at trial that the penetration had occurred from the back (while she was

---

[1] Sharpe argued the substance of what R.P. disclosed to GLSC was highly relevant to his defense that the allegations were false. The trial court denying Sharpe access to this information comprises most of Sharpe's arguments on appeal. Because we reverse on other grounds, we do not address these issues, including whether R.P. waived any privilege by testifying to the content of her communications with her attorney.

facing the wall). *Compare* Tr. at 123 (Jury Trial, June 14, 2023), *with* Tr. at 103 (Jury Trial, June 13, 2023).

**[8]**     On rebuttal, the prosecution tried to introduce several prior consistent statements made by R.P. in her written statement given to the police, which Sharpe challenged as hearsay.  Sharpe argued that the statements had to be made before the witness had a reason to fabricate her story. In a sidebar, the prosecution explicitly relied on decisions of this court to successfully argue to the judge that once a witness has been impeached on cross-examination, *any* prior consistent statement may be admitted.  *See* Tr. at 32-33 (Jury Trial, June 15, 2023) (citing *People v. Asprer*, 2019 Guam 19; *People v. Wesen*, 2022 Guam 18).

**[9]**     After the court overruled the objection and allowed the prosecution to proceed, Sharpe objected again when the prosecution tried to have R.P. read part of her written statement into the record.  During another sidebar, the prosecution argued that "under the case law for prior consistent statement, . . . even though he's impeached her on other things, I'm allowed to rebut with the statements that were consistent regardless of whether he impeached her or not." *Id.* at 34-35.  The court again overruled Sharpe's objection.

**[10]**     Both the prosecution and trial court relied on the Federal Rules of Evidence ("FRE").  *See id.* at 36 ("[W]e're talking about 801(d)(1)(B)(ii).").  *Compare* Fed. R. Evid.  801(d)(1)(B)(ii) (stating a prior consistent statement is not hearsay when offered "to rehabilitate the declarant's credibility as a witness when attacked on another ground"), *with* Guam R. Evid. 801(d)(1)(B) (adopted before subsection (ii) was added to the Federal Rules of Evidence in 2014).  The prosecution continued:

> [I]f you read the case law, Your Honor, any grounds that he attacks on, I'm allowed to bring up the grounds that were consistent, the consistent statements, whether or not on the grounds he attacked.  The thing is, he actually did attack her on the grounds.  So that he attacked her that she described it somehow differently to

everybody, so now I'm going to bring the prior consistent statement of it is exactly how she said it.

Tr. at 37 (Jury Trial, June 15, 2023).  When asked whether the statement was being offered to rehabilitate the witness, the prosecution confirmed this was the intended purpose of the testimony. The trial court again overruled Sharpe's objection.

[11]     Eventually, the following statement written by R.P. at the time of her interview with Officer Lizama was read into evidence: "Paris grabbed me by my throat and covered my mouth with his hands.  I begged him not to disrespect me.  Paris then pulled down his pants and pulled my shorts down, and penetrated me without . . . agreeing to what his intentions was." *Id.* at 39.  The prosecution then sought to have R.P. read a different part of her written statement into the record, to which the defense objected because "this is just trying to say it over and over again." *Id.*  The objection was overruled, and the following statement was also read into the record: "Paris shoved me into one empty room, slammed me into the wall with his body, holding me while he pulls his pants down, then pulls my shorts down, kicked my . . . my right leg and then . . . penetrates . . . himself in."[2] *Id.* at 40-41.

[12]     Sharpe was convicted on one count of CSC III.  He timely appealed.

## II.  JURISDICTION

[13]     We have jurisdiction over a criminal appeal from a final judgment of conviction.  48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 118-157 (2024)); 7 GCA §§ 3107, 3108(a) (2005); 8 GCA §§ 130.10, 130.15(a) (2005).

//

//

---

[2] Apparently, the handwriting in portions of the last sentence were difficult to read, which accounts for the disjointed nature of the testimony.  *See* Tr. at 41-42 (Jury Trial, June 15, 2023).

## III.  STANDARD OF REVIEW

[14]    "[A] trial court's decision concerning the admission of evidence over a hearsay objection is reviewed under an abuse of discretion standard."  *People v. Tedtaotao*, 2016 Guam 9 ¶ 10 (quoting *People v. Roten*, 2012 Guam 3 ¶ 13).  "A court abuses its discretion by basing its decision on an erroneous legal standard . . . or if, in applying the appropriate legal standards, the [trial] court misapprehended the law with respect to the underlying issues in the litigation."  *People v. Jesus*, 2009 Guam 2 ¶ 18 (second alteration in original) (quoting *San Miguel v. Dep't of Pub. Works*, 2008 Guam 3 ¶ 18).  "[E]videntiary rulings of the trial court will not be reversed absent prejudice affecting the verdict."  *People v. Callahan*, 2022 Guam 13 ¶ 33 (citing *Asprer*, 2019 Guam 19 ¶ 11).  "[T]he prosecution 'bears the burden of persuasion regarding [the absence of] prejudice,'" *People v. Blas*, 2015 Guam 30 ¶ 37 (quoting *People v. Meseral*, 2014 Guam 13 ¶ 42), which for a non-constitutional error requires a showing that "it is more probable than not that the error did not materially affect the verdict," *Callahan*, 2022 Guam 13 ¶ 17 (quoting *Jesus*, 2009 Guam 2 ¶ 54).

## IV.  ANALYSIS

### A.  The Trial Court Abused Its Discretion by Admitting Hearsay Statements that Were Not Admissible under GRE 801(D)(1)(B) or for Rehabilitation

[15]    Sharpe argues that the admission of R.P.'s written statement as a prior consistent statement "greatly prejudiced" him.  Appellant's Br. at 17-18 (Feb. 9, 2024).  In response, the People cite past decisions of this court, arguing that "extensive cross-examination . . . regarding inconsistences in" a witness's trial testimony permits the witness to read their prior consistent statements into the record.  Appellee's Br. at 30 (Apr. 11, 2024) (citing *People v. Camaddu*, 2015 Guam 2 ¶ 64).  We agree with Sharpe that "[p]rior consistent statements are not automatically admissible on re-direct just because a witness has been extensively cross examined."  Appellant's Reply Br. at 6 (Apr. 25, 2024).

[16]     GRE 801(d) defines several classes of statements that are "not hearsay."  Guam R. Evid.

801(d).[3]  The hearsay exclusion at issue here is GRE 801(d)(1)(B), known as a "prior consistent

statement."[4]  *See, e.g.*, *People v. Hall*, 2004 Guam 12 ¶ 36.  Although the ruling below generally

aligned with this court's prior decisions on the admissibility of prior consistent statements,

imprecise analysis in those decisions resulted in the trial court applying an ambiguous standard.

This standard could be misinterpreted to allow the admission of hearsay almost any time a witness

is challenged.

[17]     Today, we clarify that cross-examination alone does not automatically transform

inadmissible hearsay into admissible evidence.  The correct analysis requires first determining for

what purpose a prior consistent statement is offered, and then assessing whether the statement is

admissible for that specific purpose.  Here, the challenged statements were not admissible for any

valid purpose.

> **1. Prior consistent statements are generally inadmissible unless they rebut a charge of recent fabrication or rehabilitate a witness**

[18]     Jurisprudence on prior consistent statements is rooted in the common law.  *See Tome v.*

*United States*, 513 U.S. 150, 160 (1995).  Adoption of the FRE did not replace the common law

rules on the admissibility of prior consistent statements.[5]  *Id.* at 160-61; Floralynn Einesman, *Using*

---

[3] The federal analog stylizes these statements that are "not hearsay" as "exclusions" to distinguish them from the "exceptions" found in Rules 803, 804, 807.  *See* Sam Stonefield, *Rule 801(d)'s Oxymoronic "Not Hearsay" Classification: The Untold Backstory and a Suggested Amendment*, 5 Fed. Cts. L. Rev. 1, 51-52 (2011) ("The Supreme Court has decided four cases involving Rule 801(d).  In those cases, the Court has used the terms 'exemption,' 'exception,' and 'exclusion' more frequently than 'not hearsay.'" (footnotes omitted)).  For analytical clarity, when referring to these "not hearsay" statements, we use the term "exclusion."

[4] As discussed below, not all "prior consistent statements" fall under this exclusion.

[5] "Generally, Guam courts view federal case law concerning the Federal Rules of Evidence . . . as persuasive, given the similarities between the GRE and the FRE." *People v. Roten*, 2012 Guam 3 ¶ 16.  We find the history of the development of FRE 801(d)(1)(B) and the case law interpreting it help clarify our jurisprudence on prior consistent statements.  Although we have yet to adopt the most recent amendment to Rule 801, we still find federal decisions persuasive because FRE 801 is the rule on which GRE 801 is based and—as discussed below—our case law allows rehabilitative prior consistent statements to be considered for their substance, much in the same way FRE 801(d)(1)(B)(ii) does.

*Prior Consistent Statements to Rehabilitate Credibility or to Prove Substantive Assertions Before and After the 2014 Amendment of Federal Rule of Evidence 801(d)(1)(B)*, 41 Am. J. Trial Advoc. 1, 9 (2017) (explaining adoption of hearsay exclusion "did not replace the common law rule"); 30B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure—Evidence* § 6754 (2023 ed.) (observing that federal courts now uniformly rule that Rule 801(d)(1)(B) does not control the admission of all prior consistent statements but regulates their use once admitted).

[19]     At common law, prior consistent statements were generally inadmissible hearsay. Stephen A. Saltzburg, *Prior Consistent Statements*, 36-SPG Crim. Just. 56, 56 (2021) ("The common law saw no reason to encourage witnesses to make out-of-court statements so that they could be used in court to bolster trial testimony. The common law also reflected a view that 'a lie oft repeated does not make it true.'"); *Tome*, 513 U.S. at 157-58. Yet two limited categories of prior consistent statements were admissible for non-hearsay purposes. Liesa L. Richter, *Seeking Consistency for Prior Consistent Statements: Amending Federal Rule of Evidence 801(d)(1)(B)*, 46 Conn. L. Rev. 937, 956 (2014).

[20]     The first category includes statements used to rebut an express or implied charge of recent fabrication or improper motive. Saltzburg, *supra*, at 56 ("[T]he common law recognized that a prior consistent statement could be highly probative and important in assessing a witness's credibility if the statement tended to rebut a charge such as recent fabrication or improper motive and was made before an alleged fabrication, an improper influence, or a motive to falsify testimony came into being."). The textbook example of this category is when a prosecution witness is accused of having a motive to lie due to the favorable terms of a plea agreement. A statement made by the witness before entering into a plea agreement was generally admissible because it rebutted the charge of fabrication or motive to lie. *E.g.*, Debra T. Landis, Annotation, *Admissibility*

*of Impeached Witness' Prior Consistent Statement—Modern State Criminal Cases*, 58 A.L.R.4th 1014 §§ 16-17 (1987). "Prior consistent statements that aim[ed] to repair attacks on memory or constancy d[id] not fall within [this] narrow category . . . ." Richter, *supra*, at 958. As the Supreme Court explained, "The Rule speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told." *Tome*, 513 U.S. at 157-58.

[21]    The second category of admissible prior consistent statements includes those used to rehabilitate a witness's credibility. Richter, *supra*, at 945; 30B *Federal Practice and Procedure—Evidence* § 6754 (analyzing prior consistent statements under a traditional not-for-the-truth-of-the-matter-asserted approach "had been a non-problem" before the Rules of Evidence). There were essentially "two scenarios where litigants [could] expect success in introducing prior consistent statements" for their rehabilitative purposes. 30B *Federal Practice and Procedure—Evidence* § 6754. The clearest, albeit less frequent, example is when a "witness is accused of being forgetful at trial." Richter, *supra*, at 958; *Tome*, 513 U.S. at 170 (Breyer, J., dissenting) (citing E. Cleary, *McCormick on Evidence* § 49, at 105 n.88 (2d ed. 1972)). In such cases, "a prior consistent statement that was made close in time to underlying events can constitute powerful rehabilitation." Richter, *supra*, at 958. The more common example was that "in some limited circumstances, courts at common law recognized that a witness's prior consistent statement could repair an attack launched on that witness's credibility by virtue of a prior inconsistent statement." *Id.*; 30B *Federal Practice and Procedure—Evidence* § 6754 (stating this scenario is "narrow in scope"). The Second Circuit summarized well the development of the rule permitting rehabilitation with a consistent statement after an inconsistent statement:

> [A] prior consistent statement may be used for rehabilitation when the statement has a probative force bearing on credibility beyond merely showing repetition. When the prior statement tends to cast doubt on whether the prior inconsistent statement was made or on whether the impeaching statement is really inconsistent

with the trial testimony, its use for rehabilitation purposes is within the sound discretion of the trial judge. Such use is also permissible when the consistent statement will amplify or clarify the allegedly inconsistent statement.

*United States v. Pierre*, 781 F.2d 329, 333 (2d Cir. 1986).

[22]    "[L]awyers and judges frequently conflate the two uses of prior consistent statements . . . ."[6] Einesman, *supra*, at 1-2. We are not immune from this imprecision, and our past decisions have at times blurred the lines between these two categories of prior consistent statements. We take this opportunity to clarify that a trial court's default assumption should be that a prior consistent statement is generally inadmissible unless it is offered for one of these two purposes, that is (1) to rebut an express or implied charge that the declarant recently fabricated his testimony or acted from a recent improper influence or motive in so testifying or (2) to rehabilitate the declarant's credibility as a witness when attacked on another ground. *See* 29 Am. Jur. 2d *Evidence* § 669 (2d ed. (Oct. 2024 Update)) ("The reason for prohibiting admission of prior consistent statements is that a jury is likely to attach disproportionate significance to them; people tend to believe that which is repeated most often, regardless of its intrinsic merit, and repetition lends credibility to testimony that it might not otherwise deserve."). We now discuss these two purposes in greater detail.

### a.  Consistent premotive statements

[23]    The original FRE 801(d)(1)(B), which GRE 801(d)(1)(B) mirrors, consisted solely of the portion of the rule now labeled FRE Rule 801(d)(1)(B)(i). *See* 30B *Federal Practice and*

---

[6] As one author wryly notes:

> You would be forgiven for wondering what the big deal is about prior consistent statements. Most of the time, such out-of-court statements are repetitive of the in-court testimony, innocuous, and only objectionable as a waste of time. The witness is testifying now and said the same thing before—big yawn. However, in some types of cases, especially those involving child victims, repetition of out-of-court statements can be very powerful.

Roger C. Park & Aviva Orenstein, *Trial Objections Handbook 2d* § 4:10 (Sept. 2024 Update).

*Procedure—Evidence* § 6753. That portion of the rule allows the introduction of an out-of-court statement consistent with a testifying witness's testimony if the statement is offered "to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying." *Id.* (quoting Fed. R. Evid. 801(d)(1)(B)(i)). FRE 801 did not replace the common law on admissibility of this category of statements; "[i]t merely added another possible and different use for these statements—substantive proof of the consistent statement's assertions." Einesman, *supra*, at 9. As interpreted by the Supreme Court, "[t]his provision carves a narrow, and easily supportable exemption from the hearsay prohibition." 30B *Federal Practice and Procedure—Evidence* § 6753.

[24]    The Supreme Court's *Tome* decision parsed FRE 801(d)(1)(B)'s "ambiguous text and the common law history" to conclude the provision is narrow in scope. *Id.* (discussing *Tome*). The Court held that Rule 801(d)(1)(B) "permits the introduction of a declarant's consistent out-of-court statements to rebut a charge of recent fabrication or improper influence or motive only when those statements were made before the charged recent fabrication or improper influence or motive." *Tome*, 513 U.S. at 167. The Court reasoned that,

> The Rules do not accord this weighty, nonhearsay status to all prior consistent statements. To the contrary, admissibility under the Rules is confined to those statements offered to rebut a charge of "recent fabrication or improper influence or motive," the same phrase used by the Advisory Committee in its description of the "traditiona[l]" common law of evidence, which was the background against which the Rules were drafted. Prior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited. In the present context, the question is whether A.T.'s out-of-court statements rebutted the alleged link between her desire to be with her mother and her testimony, not whether they suggested that A.T.'s in-court testimony was true. The Rule speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told.

*Id.* at 157-58 (alteration in original) (citation omitted). The majority emphasized that "[i]f the Rule were to permit the introduction of prior statements as substantive evidence to rebut every implicit

charge that a witness' in-court testimony results from recent fabrication or improper influence or motive, the whole emphasis of the trial could shift to the out-of-court statements, not the in-court ones." *Id.* at 165. We adopted *Tome*'s premotive rule. *Hall*, 2004 Guam 12 ¶ 36 ("[T]he prior consistent statement must be made prior to the time that the supposed motive to falsify arose.").

[25] As Wright and Miller observe, although "*Tome*'s premotive rule is intuitive and largely tracks both the common law and pre-*Tome* case law. . . . application can be difficult. One problem is assessing whether a party has made an 'express or implied charge' of recent fabrication or recent improper influence or motive against the witness." 30B *Federal Practice and Procedure—Evidence* § 6753. Our decisions in *People v. Camaddu*, 2015 Guam 2, *People v. Asprer*, 2019 Guam 19, and *People v. Wesen*, 2022 Guam 18, may suggest that the proponent need only show the witness was "extensively cross-examined" to show an implied charge of recent fabrication. But this standard expands Rule 801(d)(1)(B) past the point of recognition. It is common sense that "[v]irtually every witness of consequence is challenged to some extent on cross-examination or in opening statements," yet, as Wright and Miller emphasize, "[m]any such challenges to the witness' credibility do not trigger Rule 801(d)(1)(B)." 30B *Federal Practice and Procedure—Evidence* § 6753.

[26] The Fifth Circuit has explained that the rule "cannot be construed to allow the admission of what would otherwise be hearsay every time a [witness's] credibility or memory is challenged; otherwise, cross-examination would always transform hearsay notes into admissible evidence." *United States v. Bishop*, 264 F.3d 535, 548 (5th Cir. 2001). "Mere contradictory testimony cannot give rise to an implied charge of fabrication." *Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir. 1986). The First Circuit reinforces this important point:

> Generally speaking, a charge of improper motive or recent fabrication need not be expressly made or buttressed by concrete evidence. But the proponent of evidence

> must point to specific questions during his adversary's examination that suggest recent fabrication or bias. Merely appealing to credibility as a live issue will not do the trick.

*United States v. Lozada-Rivera*, 177 F.3d 98, 104 (1st Cir. 1999).

[27]     We find the Third Circuit's formulation of what amounts to an implicit charge of fabrication to be persuasive and adopt it as the correct test: "there need be only a suggestion that the witness *consciously altered* his testimony in order to permit the use of earlier statements that are generally consistent with the testimony at trial." *United States v. Frazier*, 469 F.3d 85, 88 (3d Cir. 2006) (emphasis added) (quoting *United States v. Casoni*, 950 F.2d 893, 904 (3d Cir. 1991)). Under this standard, "a judge must make an objective determination based on its examination of the entire trial record to determine whether the impeaching counsel's trial tactics could reasonably be taken by a jury as implying recent fabrication or improper influence or motive." *Id.* at 89. Thus, the focus should be on whether the witness has been charged with *consciously altering* their testimony—not the extent to which the witness has been cross-examined.

[28]     Due to the ambiguity in *Camaddu*, *Asprer*, and *Wesen*, those cases could be interpreted to suggest that if a witness is impeached on any grounds, all prior consistent statements become admissible. We find this standard is overbroad and agree with the federal courts that "the premotive requirement serves to prevent the introduction of the bulk of consistent statements." 30B *Federal Practice and Procedure—Evidence* § 6753.

### b. Consistent statements offered to rehabilitate

[29]     In 2014, a new subsection was added to the federal rules, FRE 801(d)(1)(B)(ii), which states that a testifying witness's prior consistent statement is "not hearsay" if it is offered "to rehabilitate the declarant's credibility as a witness when attacked on another ground." That is, "any other ground than the narrow ground recognized in Rule 801(d)(1)(B)(i)." 30B *Federal*

*Practice and Procedure—Evidence* § 6754. The Advisory Committee Notes explain: "The amendment does not make any consistent statement admissible that was not admissible previously -- the only difference is that prior consistent statements otherwise admissible for rehabilitation are now admissible substantively as well." Fed. R. Evid. 801 advisory committee's note to 2014 amendment. "In other words, the 2014 amendment purports to make no change to the admissibility of prior consistent statements. It only expands the permissible use of such statements once admitted." 30B *Federal Practice and Procedure—Evidence* § 6754.

[30]     Thus, although the text of the current versions of FRE 801(d)(1)(B) and GRE 801(d)(1)(B) seem quite disparate, the only difference is the "infinitesimal distance between substantive and non-substantive use of a testifying witness' prior consistent statement." *Id.*[7] As discussed below, our decisions, which allowed rehabilitative statements to be considered for their substance, closed that distance.

[31]     Admissibility of prior consistent statements under both subsections of FRE 801(d)(1)(B) remains governed by the common law standard. Unfortunately, as Wright and Miller note, the law that "purports to identify the proper approach to the admissibility of prior consistent statements of testifying witnesses that do not qualify for admission under Rule 801(d)(1)(B)(i) and *Tome*" is a "decades-old morass." *Id.* Although Ninth Circuit precedent has been a historical outlier,[8]

---

[7] As Wright and Miller observe, practically speaking, the efficacy of instructing a jury not to consider a prior consistent statement for its substance is a legal fiction. 30B *Federal Practice and Procedure—Evidence* § 6754 ("[T]he futility of such a limiting instruction appears to be the primary motivation for the 2014 amendment to Rule 801(d)(1)(B).").

[8] This court's citation of Ninth Circuit precedent in the past without much analysis may have left it unclear whether the court was adopting the all-or-nothing approach of the Ninth Circuit. *See United States v. Miller*, 874 F.2d 1255, 1273 (9th Cir. 1989) ("[A] prior consistent statement offered for rehabilitation is either admissible under Rule 801(d)(1)(B) or it is not admissible at all."); 30B *Federal Practice and Procedure—Evidence* § 6754. We clarify that our past decisions did not adopt this approach, which the Ninth Circuit has since abandoned. *See* 30B *Federal Practice and Procedure—Evidence* § 6754 (citing *United States v. Curley*, 74 F.3d 1246 (9th Cir. 1996) (unpublished)). Because we find that our rules and case law allow both consistent promotive statements and rehabilitative statements to be considered for their substance, federal decisions following the 2014 amendment to FRE 801 should be seen as persuasive.

"federal courts that actually take on the question now uniformly rule that, at least in certain circumstances, a prior consistent statement can be offered to rehabilitate a witness even if it does not qualify for admission under Rule 801(d)(1)(B)(i)." *Id.* Wright and Miller provide a helpful summary:

> Beyond the broad point of agreement . . . , however, the courts do a poor job of defining the boundaries of admitting statements for a non-hearsay rehabilitation purpose. Guidance is lacking and the case law is fuzzy. The difficulty comes from the breathtaking possibilities of a frank recognition that all prior consistent statements speak to credibility through corroboration and consequently could theoretically be admitted as non-hearsay. The critical question, then, is where to draw the line.
>
> There are, perhaps, two clear rules. One thing the courts all agree on is that there is "no rule admitting all prior consistent statements simply to bolster the credibility of a witness." While consistent repetition of a sentiment may support an inference of credibility, the courts uniformly reject prior consistent statements offered merely to demonstrate that the witness has said the same thing on prior occasions. As the Second Circuit explains, a prior consistent statement may only be used for rehabilitation "when the statement has a probative force bearing on credibility beyond merely showing repetition." Second, and relatedly, implicit in the concept of rehabilitation is the assumption that the witness' credibility has been attacked. Absent some form of attack on the witness' credibility, a party will have difficulty introducing prior consistent statements to rehabilitate the witness. "For how can one rehabilitate what has not yet been discredited?"
>
> Moving beyond these two clear principles, the most that can be divined from the federal case law is that while the theoretical possibilities of successful rehabilitation by prior consistent statement may be endless, there are only two scenarios where litigants can expect success in introducing prior consistent statements outside of Rule 801(d)(1)(B)(i).
>
> The first scenario where prior consistent statements will be successfully introduced as rehabilitation was referenced by Justice Breyer in *Tome*: to rebut an allegation of faulty memory. . . .
>
> The second scenario where success is likely is by far the most common in the federal case law: reliance on a prior consistent statement to rehabilitate a witness after impeachment by prior inconsistent statement.

*Id.*[9]

[32]     In defining the boundaries of admitting statements for a non-hearsay rehabilitation purpose, our guidance may similarly be lacking, and our case law less than precise, reflecting the challenges courts have faced in carving out a bright-line rule.

[33]     When this court's past decisions are taken together, some might answer the "critical question" of "where to draw the line" by arguing there are no lines at all. *See id.* ("[A]ll prior consistent statements speak to credibility through corroboration and consequently could theoretically be admitted as non-hearsay. The critical question, then, is where to draw the line.").

[34]     We clarify that a trial court's discretion should be guided by the same considerations that exist under the common law and Federal Rules of Evidence.

### 2. We limit our prior decisions to provide the same safeguards that exist under the federal rules and common law

[35]     On its face, one would be hard-pressed to find a more erroneous legal standard than applying a Rule of Evidence that does not exist. The exchange between the prosecution and trial court in a sidebar about Sharpe's objection to the proffered statements he challenges as inadmissible hearsay shows they were applying Rule "801(d)(1)(B)(ii)"—a provision that does not exist in the GRE. *See* Tr. at 36 (Jury Trial, June 15, 2023).

[36]     Yet even without an analog to FRE 801(d)(1)(B)(ii) in the GRE, this court's prior decisions can be read to allow rehabilitative prior consistent statements to be considered for their substance.

---

[9] Other examples of permissible uses for rehabilitation remain an open question. *See* 30B *Federal Practice and Procedure—Evidence* § 6754 (observing this remains an open question in federal case law, but "the actual applications in the case law almost always involve rehabilitation with a prior consistent statement drawn from the same interview or conversation as the impeaching prior inconsistent statement"). Although "[o]ther scenarios are hard to conjure," when a trial court faces a unique use of a prior consistent statement, its decision should be guided by Rules 401 and 403. *Id.* ("The logical place to look for additional guidance in this context is Federal Rule of Evidence 403."); 4 Clifford S. Fishman & Anne Toomey McKenna, *Jones on Evidence* § 26:41.30 (7th ed. 2023) ("[T]he offering party must demonstrate that the statement is legitimately relevant to refute the manner in which the witness's testimony was impeached, and is not merely a repeat of the witness's trial testimony.").

We clarify that our past decisions should be understood to hold that rehabilitative prior consistent statements are admissible and may be considered for their substance.

[37] We now make clear that while these cases permit rehabilitative statements to be considered for their substance, they should not be understood to strip away the safeguards that exist in the common law and federal rules.

### a. *Camaddu*

[38] Our case law on prior consistent statements started to lose clarity with *Camaddu*. 2015 Guam 2 ¶¶ 55-64; *see also* 30B *Federal Practice and Procedure—Evidence* § 6754 (lamenting how federal courts have done "a poor job of defining the boundaries of admitting statements for a non-hearsay rehabilitation purpose" and concluding that "[g]uidance is lacking and the case law is fuzzy"). *Camaddu* was a case involving CSC against a child victim, where the victim and a detective testified as witnesses for the People. 2015 Guam 2 ¶ 55. During the defense's case, the detective was recalled to testify about incidents the victim had described, "specifically, regarding inconsistencies between what [the victim] told [the detective] and what [the victim] testified to at trial, having to do primarily with where various incidents took place, what time of day they took place, what [the victim] was wearing at the time, and other such details about how the various incidents unfolded." *Id.* ¶ 56. Defense counsel was granted permission to ask the detective leading questions on direct, with the articulated purpose of avoiding "open[ing] the door and allow[ing] a mere retelling of the entire case of the People." *Id.* ¶ 58. Defense counsel emphasized that he only asked questions specific to the inconsistent statements the victim made during trial. *Id.* Apparently, during defense counsel's direct examination of the detective, he used the detective's report to refresh her recollection. *See id.* ¶ 59. On the potentially incorrect basis that Camaddu had "opened the door and challenged [the victim]'s credibility and memory" by refreshing the

detective's recollection with her report,[10] the People were allowed questions on cross well beyond the scope of Camaddu's direct examination to "point[] out all the consistent statements [the victim] made at trial and to [the detective]." *Id.*

[39]     Although we cited Ninth Circuit precedent on prior consistent statements with approval in *Hall*, 2004 Guam 12 ¶ 36 (citing *United States v. Beltran*, 165 F.3d 1266, 1269-70 (9th Cir. 1999)), in *Camaddu*, we did not adopt the Ninth Circuit's "opened door" rationale,[11] *e.g.*, *United States v. Sine*, 493 F.3d 1021, 1037-38 (9th Cir. 2007) (discussing "opened door" rationale and concluding that statements admissible for rehabilitation but not admissible under Rule 801(d)(1)(B) cannot be used as substantive evidence). Instead, our opinion acknowledged that the statements were proffered as "prior consistent statements sought to rehabilitate [the victim]," *Camaddu*, 2015 Guam 2 ¶ 61, and ultimately concluded the jury could properly consider these statements for their substance, *see id.* ¶ 64. This conclusion illustrated that we were uncomfortable embracing the

---

[10] It is a dubious proposition that refreshing one witness's recollection challenged another's memory and credibility. Furthermore, the plain language of GRE 612 simply does not establish that using part of a document to refresh a witness's recollection on specific points "opens the door" and expands the scope of cross-examination to everything contained within the document. *See* Guam R. Evid. 612; *see also, e.g.*, *United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982) (holding that where defense itself introduced into evidence relevant portions of writing used by its witness to refresh his memory, the prosecution did not have a right to see, much less to introduce into evidence, portions of the reports unrelated to the testimony of the defense witness, and trial court had obligation to examine the writing and excise any irrelevant matter); *cf. United States v. Wright*, 489 F.2d 1181, 1188 (D.C. Cir. 1973) ("It is a hornbook rule of evidence that, had investigator Reeves used *parts* of his report to refresh his recollection while on the witness stand, the prosecution would be entitled to examine *those parts* of the report and would be permitted to make use of *those parts* of the report in cross-examining Reeves." (emphasis added)). The concept of "opening the door" is notoriously imprecise. 21 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure—Evidence* § 5039 (2d ed. (June 2024 Update)). We agree that "it would be no great loss if the phrase 'opening the door' disappeared from the lexicon of evidence law." *Id.* § 5039.1.

[11] The Ninth Circuit has used the "opened door" rationale as a loosely defined shorthand for the rehabilitative use of prior consistent statements. *See United States v. Collicott*, 92 F.3d 973, 981 n.6 (9th Cir. 1996); 30B *Federal Practice and Procedure—Evidence* § 6754 (criticizing as awkward the Ninth Circuit's reference to the non-hearsay use of prior consistent statements as the "opened door doctrine"). The *Collicott* decision relied on the Supreme Court's *Tome* decision to formulate the Ninth Circuit's test for admissibility under Rule 801(d)(1)(B), which we adopted in *Hall*. *See Collicott*, 92 F.3d at 979; *People v. Hall*, 2004 Guam 12 ¶ 36. But *Collicott* also analyzed separately whether the challenged statement could have been admitted for rehabilitative purposes. 92 F.3d at 980. Although the Ninth Circuit ultimately rejected the idea, at the time *Collicott* was decided, it was an open question "whether, in light of *Tome*, this circuit permits statements, which are admissible under the "opened door" rationale but not under Rule 801(d)(1)(B), to be used as substantive evidence even though the "opened door" rationale is distinct from Rule 801(d)(1)(B)." *Id.* at 982 n.11.

legal fiction that juries would not consider rehabilitative statements for their substance. Unfortunately, the analysis we used to reach this conclusion was imprecise.

[40]    The court observed, using a phrase that later cases adopted as a standard, that "[the victim] was extensively cross-examined by Camaddu's counsel regarding her testimony, and in particular, regarding conflicting or inconsistent details between what she testified to and what she previously told the police." *Id.* ¶ 61.  The court then quoted extensively from Wharton's Criminal Evidence, emphasizing the following sentence: "*To be admissible, a prior consistent statement must also respond to the specific point on which the witness had been impeached.*"  *Id.* ¶ 62 (citing 2 Wharton's Criminal Evidence § 9:39 (15th ed. 1997)).  Instead of matching the prior consistent statements to the specific points of impeachment, the court generalized, stating that the victim "was impeached regarding details of the incidents that are the subject of the charges brought against Camaddu."  *Id.*  The opinion then conflated impeachment with motive to lie, concluding that "there was extensive cross-examination of [the victim] regarding not only the inconsistencies of her statements, but her arguable motive to lie." *Id.* ¶ 63.  Based on certain testimony,[12] the court held "there was an express charge by Camaddu's counsel of [the victim's] recent fabrication, improper influence, or motive to lie."  *Id.*  After identifying only the charge of fabrication and ignoring further analysis required under the federal rules, the court then concluded that "[the victim] was impeached during her cross-examination as to details [the detective] was asked about in the People's cross-examination of her, which the trial court ruled could come in as prior

---

[12] The court found the following actions all went to Camaddu's counsel trying to establish motive for fabrication of testimony: (1) asking the victim during cross-examination about the hatred her sister had for Camaddu; (2) telling the judge during a sidebar discussion over the People's objection to the question that he was taking that line of questioning because it went to the victim's motivation to be untruthful; (3) engaging in lengthy cross-examination of the victim about her sisters wanting Camaddu to go to jail; and (4) engaging in lengthy cross-examination about the victim's mother being worried that Camaddu might get custody of her.  *People v. Camaddu*, 2015 Guam 2 ¶ 63. This conclusion that there was an express charge of recent fabrication was correct, but as discussed elsewhere throughout this section, this does not end the analysis.

consistent statements." *Id.* ¶ 64.  This approach blurred the distinction between prior consistent statements used to rebut a charge of fabrication and those admitted to rehabilitate.  Although federal interpretations of the FRE do not bind this court, the *Camaddu* opinion does not explain the decision to depart from a body of law that had been found to be persuasive up until that point.

[41]    We clarify that *Camaddu* still holds that a jury may consider a rehabilitative prior consistent statement for its substance.  But the analysis in *Camaddu* needlessly blended two strands of analysis to reach this conclusion.

### b.  *Asprer* and *Wesen*

[42]    Our decision in *Asprer* has been applied in a way that allows prior consistent statements to effectively become an exclusion that has swallowed the rule.  In *Asper*, this court recited the Rule 801(d)(1)(B) standard from *Hall* and then concluded that because the victim had been impeached, this constituted "an implicit charge of recent fabrication."  *Asprer*, 2019 Guam 19 ¶ 14.  The conclusion seemingly justified the use of rehabilitative statements as substantive evidence.  Despite reiterating the principle from Wharton's that "[t]o be admissible, a prior consistent statement must also respond to the specific point on which the witness had been impeached," *id.* ¶ 15 (citation omitted), this court summarily rejected Asprer's contention that "it was improper for the People to elicit statements that did not address the specific details on which [the victim] had been impeached," *id.* ¶ 16.  Rather than provide meaningful analysis to reconcile this apparent contradiction, the court merely analogized to *Camaddu*, stating the facts were "indistinguishable." *Id.* ¶ 16.

[43]    Finally, this court's recent opinion in *Wesen* highlights how the ambiguity in our past decisions can be interpreted to suggest a standard that can be met almost automatically.  *Wesen* relies heavily on *Camaddu* and posits that when a victim is "extensively cross-examined about

inconsistencies in her trial testimony," this amounts to an "express charge . . . of [the victim's] recent fabrication, improper influence, or motive to lie." *Wesen*, 2022 Guam 18 ¶ 33 (alterations in original) (quoting *Camaddu*, 2015 Guam 2 ¶ 63). In *Wesen*, the court again analogized to *Camaddu*, and highlighted that "O.W., like the victim in *Camaddu*, was subject to extensive cross-examination." *Id.* ¶ 34. After finding there was an implied charge of fabrication, the court concluded the testimony was admissible under GRE 801(d)(1)(B) without further analysis.

### c. *Camaddu*, *Asprer*, and *Wesen* are limited to their conclusions permitting the substantive use of prior consistent statements

[44]  Taken together, the imprecise language in *Camaddu*, *Asprer*, and *Wesen* can be interpreted to create a standard for prior consistent statements that is breathtakingly permissive—allowing the admission of any and all prior consistent statements for their substance whenever a witness is impeached on any grounds.

[45]  The People's arguments in this case—both before the trial court and on appeal—illustrate how these decisions can be misapplied: no distinction is made between statements offered for rehabilitation or to rebut charges of fabrication. Instead, the only inquiry is whether there was an implied or express charge of recent fabrication, improper influence, or motive to lie. If there is an express charge, the analysis ends, and the testimony is admitted. Alternatively, the definition of an implied charge of fabrication or improper motive is so broad it encompasses not only what the federal rule captures but also statements used for rehabilitation. Under *Wesen* and *Camaddu*, a proponent can successfully argue that merely showing the witness was "extensively cross-examined" suffices to establish an implied charge of recent fabrication. *But see Examination of Witnesses* § 10:11 (2d. ed. (Oct. 2024 Update)) ("[M]ere contradictory testimony cannot give rise to an implied charge of fabrication."); 29 Am. Jur. 2d *Evidence* § 670 ("[A] prior inconsistent statement will not automatically raise a charge of recent fabrication or improper influence. . . .

Moreover, a contradiction in testimony by itself does not necessarily give rise to an implied charge of fabrication or improper motive." (footnotes omitted)); Laird C. Kirkpatrick & Christopher B. Mueller, *Prior Consistent Statements: The Dangers of Misinterpreting Recently Amended Federal Rule of Evidence 801(d)(1)(B)*, 84 Geo. Wash. L. Rev. Arguendo 193, 196 (2016) ("[I]t has never been the rule that impeachment by prior inconsistent statement automatically opens the door to evidence of prior consistent statements.").

[46]    This was not our intent when we decided those cases, and we clarify those cases do not stand for that proposition. *Camaddu*, *Asprer*, and *Wesen* hold that rehabilitative prior consistent statements can be considered for their substance. But any attempt to shoehorn these rehabilitative statements into the framework established by GRE 801(d)(1)(B) to justify their substantive use is misguided. Instead, this can be justified by the fact that "the distinction between substantive use and that only of rehabilitation [is] confusing and without practical significance." *Worthy v. United States*, 100 A.3d 1095, 1097 n.3 (D.C. 2014). We agree that:

> once a decision is made to admit a prior consistent statement, it makes no sense to try to admit it as nonsubstantive evidence because the fact that it is the same as trial testimony means that if the jury believes the trial testimony, it must also believe the prior consistent statement and inevitably will use the prior consistent statement as the equivalent of the trial testimony.

Saltzburg, *supra*, at 58.

[47]    We hold that our case law allows rehabilitative prior consistent statements to be considered for their substance, much in the same way FRE 801(d)(1)(B)(ii) does. The trial court did not err when it looked to the federal rules for guidance when resolving Sharpe's hearsay objections. Although we have no rule analogous to the current FRE 801(d)(1)(B)(ii), use of a witness's prior consistent statement at trial pursuant to FRE Rule 801(d)(1)(B)(ii) is not inconsistent with established Guam case law. *See, e.g.*, *Anuhco, Inc. v. Westinghouse Credit Corp.*, 883 S.W.2d

910, 927 (Mo. Ct. App. 1994); *Trident Grp., LLC v. Miss. Valley Roofing, Inc.*, 279 S.W.3d 192, 199 (Mo. Ct. App. 2009) (per curiam) (following FRE 801(d)(1)(B) despite Missouri not having codified evidence rules). However, if rehabilitative prior consistent statements are to be properly considered for their substance in future cases, the analytical framework must be clarified.

### d. Adequate safeguards must be followed when admitting prior consistent statements

[48]    In merging the two independent strands of analysis, we have unintentionally relegated to an afterthought the other requirements that exist as safeguards in the common law and federal rules. It simply cannot be that the more thoroughly defense counsel discredits an alleged victim's story on cross-examination, the more likely it becomes that a police officer or other authority figure may read the victim's complete narrative into the record. *See* Reply Br. at 6; 1 Kenneth S. Broun et al., *McCormick on Evidence* § 47 (Robert P. Mosteller ed., 8th ed. (July 2022 Update)) ("Even when part of a witness's prior statement is logically relevant to the witness's rehabilitation, only that part of the witness's earlier overall narrative is admissible for that purpose. The witness's proponent does not have carte blanche to introduce the entire narrative simply because one passage has legitimate evidentiary value as rehabilitation." (footnotes omitted)). We emphasize the following safeguards and clarify that depending on a prior consistent statement's proffered use, the analysis must be different.

[49]    If the prior consistent statement is one that traditionally would be viewed as fitting within the narrow exclusion for rebutting an express or implied charge of recent fabrication, there must be additional analysis of whether the consistent statement was made before the alleged fabrication, influence, or motive came into being. *See Tome*, 513 U.S. at 156. Additionally, the prior statement must tend to rebut at least one of the improper influences or motives suggested by defense counsel. *United States v. Kootswatewa*, 893 F.3d 1127, 1135 (9th Cir. 2018); *United States v. Gonzalez*,

533 F.3d 1057, 1061 (9th Cir. 2008) ("The Rule 'speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told.'" (quoting *Tome*, 513 U.S. at 158)).

[50]     When a prior consistent statement is offered to rehabilitate, our case law allows it to be considered for its substance, but the protections that exist under the common law and FRE 801(d)(1)(B)(ii) must be observed.  First, for a rehabilitative statement to be admissible, the witness must be "attacked on another ground," i.e., any other ground than the narrow ground recognized in GRE 801(d)(1)(B).  *See, e.g.*, *United States v. Portillo*, 969 F.3d 144, 175 (5th Cir. 2020).  In other words, a rehabilitative prior consistent statement may be offered when a witness is impeached on their credibility or memory.  *United States v. Purcell*, 967 F.3d 159, 196-97 (2d Cir. 2020) (quoting *United States v. Flores*, 945 F.3d 687, 705-06 (2d Cir. 2019)).  But this does not extend to situations where a witness is attacked in a manner that "directly suggest[s] that the accuracy of [the witness's] trial testimony was marred by recent fabrication or a recently created improper motive or influence."  *Id.* at 197.  When a witness is charged with fabricating their story or acting from an improper influence or motive, a rehabilitative statement cannot be used as "an end-run" around the limitations in GRE 801(d)(1)(B).  *See Portillo*, 969 F.3d at 176.

[51]     Second, the statement must be "legitimately relevant to refute the manner in which the witness's testimony was impeached."  *See* 4 *Jones on Evidence* § 26:41.30; Saltzburg, *supra*, at 59.  We reaffirm the principle that to be admissible, a rehabilitative statement must "respond to the specific point on which the witness had been impeached."  *Camaddu*, 2015 Guam 2 ¶ 62; *Asprer*, 2019 Guam 19 ¶ 15.  It will no longer suffice to summarily conclude that if a witness is impeached about specific details of an incident, every other detail consistent with their testimony can be admitted; this is literally the definition of bolstering.  A rehabilitative statement must have "some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a

statement consistent with his trial testimony." *See* 4 *Jones on Evidence* § 26:41.30. The statement must have probative force bearing on credibility beyond merely showing repetition. *Pierre*, 781 F.2d at 333. And even if the prior statement is relevant, the trial court must still apply GRE 403 to decide whether it is so prejudicial that it must be excluded. *See* 98 C.J.S. *Witnesses* § 829 (Dec. 2024 Update).

### 3. The trial court abused its discretion

[52]	This record, along with Sharpe's brief, shows Sharpe made an express charge that the alleged victim's testimony was a fabrication—albeit not a recent one, but from the very outset. Appellant's Br. at 17-18 ("Sharpe maintained that R.P.'s entire story was delusional . . . . His case was not that she had recently fabricated one story as opposed to another, but rather that her entire charge of sexual assault was delusional."); Reply Br. at 7 ("Here, defendant's case was not that he was surprised by R.P.'s testimony, as if it were a recent fabrication. It was that R.P. was delusional."). Thus, the proper legal framework for decision of this hearsay objection is set by current FRE 801(d)(1)(B)(i) and its exposition in *Tome*, which this court endorsed in *Hall*. *Hall*, 2004 Guam 12 ¶ 36. If the challenged statements do not meet these elements, it would be inappropriate to admit them as rehabilitative prior consistent statements because such statements are admissible only when the witness is attacked on "another ground" separate from a charge of fabrication.

[53]	The temporal requirement of Rule 801(d)(1)(B) is dispositive here because the defense charges the victim with fabricating the allegations from the outset. "*Tome* makes clear that statements are admissible under Rule 801(d)(1)(B) only if the statements were made before the existence of the motive to fabricate." *United States v. Collicott*, 92 F.3d 973, 979 (9th Cir. 1996) (citing *Tome*, 513 U.S. at 156-57). When the defendant alleges that he has been falsely accused

of a crime that did not occur, the motive to fabricate existed at least as early as the initial report of the crime. *See, e.g.*, *People v. Mahone*, 816 N.W.2d 436, 440 (Mich. Ct. App. 2011) ("[T]he alleged motive to falsify would have arisen before the victim talked to the officer."); *Kitchings v. State*, 291 So. 3d 181, 195 (Fla. Dist. Ct. App. 2020) ("The entire defense in this case was that M.R.'s fabrication was *not* recent, that it began when she first contacted the 911 operator, so section 90.801(2)(b) would not apply to admit the prior statement as substantive evidence."); *Hajireen v. State*, 39 A.3d 105, 115 (Md. Ct. Spec. App. 2012) ("Defense counsel's argument, however, was that, for reasons unknown, J.M. made up the entire incident, from the beginning when she told her mother. J.M.'s subsequent statements to the social worker, therefore, were not made prior to the time the alleged, but unexplained, bias originated. Because her statements were not made 'premotive,' they were not admissible pursuant to Rule 5–802.1."); *Bertram v. State*, 637 So. 2d 258, 260 (Fla. Dist. Ct. App. 1994) ("Bertram's defense was that the charges were fabricated, but not that they were recently fabricated. Bertram contends that the allegations were fabricated just prior to the niece's hearsay statement, which led to his arrest . . . . Instead, the hearsay was offered to bolster the niece's credibility, and this was error."); *Hebel v. State*, 765 So. 2d 143, 146 (Fla. Dist. Ct. App. 2000) ("The defense theory in this sexual battery case was that P.H.C. had fabricated the charges from the outset, not that she had 'recently' fabricated them, as would have been apparent had she made different statements previously."); *cf. Collicott*, 92 F.3d at 979 ("[The witness's] motive to fabricate, if she had one, would have existed from the moment she was stopped with Collicott by the Sheriffs because she did not want the Sheriffs to believe that she owned the drugs in the car.").

[54] The entire defense was that the victim's fabrication was not recent—that the allegations were fabricated from the outset. R.P.'s written statement to the police was made after she sought

a permanent restraining order and met with Healing Hearts. The prior consistent statements offered by the prosecution, therefore, could not have predated the motive to fabricate.

[55] Even if we considered whether the statements could be admitted for rehabilitation, it is highly irregular to try to rehabilitate a witness impeached with an inconsistent statement through a statement from a different source—especially when the proffered statement was made *after* the inconsistent statement. *See McGarity v. State*, 856 S.E.2d 241, 248 n.7 (Ga. 2021) (stating consensus view about rehabilitative prior consistent statements is they "are admissible only to the extent they 'come from the same source,' meaning that the two statements were made in the same interview, witness statement, or conversation" (quoting 30B Charles Allen Wright & Jeffrey Bellin, *Federal Practice and Procedure—Evidence* § 6754 (2020 ed.))); *Torney v. United States*, 300 A.3d 760, 778 (D.C. 2023) ("'[O]nce an inconsistency in statements is shown, evidence of additional consistent statements does not remove the inconsistencies[]'; instead, the admission of prior consistent statements simply has the effect of 'unfairly bolstering the witness' credibility.'" (citations omitted)).

[56] The People did not attempt to rehabilitate R.P. with other parts of her statement from Healing Hearts that "plac[ed] the inconsistencies * * * in a broader context, demonstrating that the inconsistencies were a minor part of an otherwise consistent account." *See Collicott*, 92 F.3d at 980 (citation omitted); *see also United States v. Cotton*, 823 F.3d 430, 437 (8th Cir. 2016) ("Use of a prior consistent statement to rehabilitate the credibility of a witness who has been impeached by a prior inconsistent statement is appropriate when the statement contextualizes, clarifies, or amplifies the meaning of the witness's testimony or inconsistent statement."). The statement R.P. gave to police did not remove any inconsistencies between her trial testimony and her statement to Healing Hearts, nor did it contextualize, clarify, or amplify the meaning of her statement to

Healing Hearts. We need not decide whether rehabilitative statements also have a temporal requirement, but we are skeptical of the probative value of a statement made after the inconsistent statement. *See, e.g.*, *State v. Norman*, 618 S.W.3d 570, 575-76 (Mo. Ct. App. 2020) ("[W]hen a witness has been impeached by proof of [her] statements inconsistent with [her] trial testimony, prior consistent statements are admissible into evidence for the purpose of rehabilitation *if, and only if, the prior consistent rehabilitating statement was made prior to the impeaching statement*." (second and third alterations in original) (citation omitted)).

[57]     The trial court abused its discretion when it admitted the testimony because it applied the wrong legal standard, failing to apply the temporal requirements of GRE 801(d)(1)(B). *See Hall*, 2004 Guam 12 ¶ 36.[13]

## B. The Error Was Not Harmless

[58]     "[W]here the trial court has abused its discretion in admitting certain evidence, the proper standard for evaluating whether reversal is required is the harmless error standard." *Roten*, 2012 Guam 3 ¶ 41. "A non-constitutional error requires reversal unless it is more probable than not that the error did not materially affect the verdict." *Jesus*, 2009 Guam 2 ¶ 54. The People bear the burden of making this showing. *People v. Pugh*, 2018 Guam 14 ¶¶ 26-27. The People's entire argument on harmlessness comprises the following: "If this court finds that the trial court abuse[d] its discretion, reversal is not required under a harmless error standard. The prosecution's use of the prior consistent statements were limited in nature, and R.P. had already testified to the substance of those statements on direct examination." Appellee's Br. at 31.

---

[13] Because our past jurisprudence on prior consistent statements allows rehabilitative statements to be considered for their substance, we cannot say the trial court abused its discretion in relying on FRE 801(d)(1)(B)(ii) for guidance. Still, the statements would not be admissible under either subsection of FRE 801(d)(1)(B).

**[59]**     The harmless error "inquiry typically involves analysis of numerous factors, including: (1) the overall strength of the prosecution's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted evidence; and (4) whether such evidence was cumulative of other properly admitted evidence." *Roten*, 2012 Guam 3 ¶ 41.

**[60]**     The first three factors all weigh against a finding that the error was harmless. The prosecution's case was rather weak, and there was no physical evidence or eyewitness testimony from third parties. Their entire case stood or fell on the credibility of R.P. The prosecutor also relied on the improperly admitted evidence in her closing argument and emphasized that R.P.'s written statement given to the police showed she was truthful. Tr. at 11-12 (Jury Trial, June 19, 2023) ("Mr. Bischoff is probably going to come up here and say, oh no, she told Healing Hearts that he raped her from the front, so like she's a liar. I need you to think about whether that happened, because the reason why I had R.P. read verbatim her written statement that she wrote to the police is this is how she said it."). R.P.'s credibility was the dispositive issue at trial; the wrongly admitted evidence allowed the prosecution to bolster R.P. on the critical issue.

**[61]**     The People argue that any error was harmless because the testimony was cumulative of other testimony. But this raises fundamental questions about the purpose of the rule against hearsay. Prior consistent statements are cumulative by definition, because they must be consistent with testimony given at trial. To accept the People's premise would render GRE 801(d)(1)(B) a mere suggestion that can be violated without consequence, because on appeal the error would always be harmless since prior consistent statements are always cumulative. *But see People v. Washington*, 458 P.2d 479, 488 n.8 (Cal. 1969) (in bank) ("We do not mean to imply by our holding herein that the introduction of prior consistent statements for substantive use will always

be harmless error."), *abrogated on other grounds by People v. Green*, 609 P.2d 468 (Cal. 1980). The error was not harmless. *See Smith v. State*, 686 P.2d 247, 249 (Nev. 1984) (per curiam) ("The independent evidence of guilt is far from overwhelming, and is virtually insignificant without the testimony of the victim. The state was unable to present any physical evidence of a sexual assault, and there were no eyewitnesses to the offense. Even though the state's case did not rest 'entirely' on the victim's credibility, the presence of independent but minimal evidence of guilt will not render the error harmless."); *Coluntino v. State*, 620 So. 2d 244 (Fla. Dist. Ct. App. 1993) (per curiam) (holding improper admission on redirect of alleged victim's prior consistent statement was not harmless error, but rather was highly prejudicial; alleged victim was state's only eyewitness, whose credibility was crucial issue that jury had to resolve); *Nitz v. State*, 720 P.2d 55, 68-69 (Alaska Ct. App. 1986) (finding reversible error where "jury was never properly instructed of the limited purpose for which the evidence could be considered," and victim's testimony was of critical importance to State's case). We find the error was not harmless and vacate the judgment.

## V. CONCLUSION

[62]    The Superior Court abused its discretion when it admitted a prior consistent statement proffered to rebut a charge of fabrication that did not predate the motive to fabricate. The statements offered by the prosecution were not admissible for any proper purpose. The error was not harmless. We **VACATE** the judgment and **REMAND** for a new trial.


| /s/ | /s/ |
| :---: | :---: |
| F. PHILIP CARBULLIDO | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |


/s/
ROBERT J. TORRES
Chief Justice